UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL STORZ ENDOSCOPY-AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> STRYKER CORPORATION, et al., <br><br> Defendants. | Case No. 14-cv-00876-RS   (JSC) <br><br> **ORDER RE:  PROTECTIVE ORDER DISPUTE** <br><br> Re: Dkt. No. 94 |

In this patent infringement lawsuit the parties dispute the protections to be given to confidential information belonging to Defendants Stryker Corporation and Stryker Communications, Inc. (together, "Stryker").  Now pending before the Court is the motion of Plaintiff Karl Storz Endoscopy-America ("KSEA") for a protective order.  (Dkt. No. 94.)  KSEA seeks entry of a protective order that does not include a patent prosecution bar (*id.* at 2; *see* Dkt. No. 95), while Stryker urges the Court to impose a protective order that does include such a provision.  (*See* Dkt. No. 98.)  After carefully considering the parties' arguments, and having had the benefit of oral argument on November 20, 2014, the Court rules as set forth below.

## BACKGROUND

On February 26, 2014, KSEA filed a complaint against Stryker for patent infringement.[1]  (Dkt. No. 1; Dkt. No. 67.)  The parties, both producers and sellers of medical imaging devices and operating room communication technology (*see* Dkt. No. 67; Dkt. No. 94 at 3), have been engaged in discovery since June of 2014.  (Dkt. No. 59.)  Part of this discovery pertains to information regarding the structure and operation of Stryker's allegedly infringing products.  (*See* Dkt. No. 94 at 3.)  The parties have reached an agreement as to all terms of a protective order except for one:

---

[1] KSEA alleges that Stryker has infringed five patents, numbers 8,069,420; 7,471,310; 7,821,530; 7,844,657; and 8,439,821.  (Dkt. No. 67 ¶¶ 11-15.)

whether or not the order should include a patent prosecution bar.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984). Generally, the party seeking a protective order has the burden of showing that the protection is warranted. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

Federal Circuit law governs the determination of whether a protective order should include a patent prosecution bar. *See In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). The party seeking the prosecution bar must demonstrate good cause for its inclusion, which involves two showings. First, the party must show that there is an unacceptable risk of disclosure of confidential information. Such risk may exist when litigation counsel is also involved in "competitive decisionmaking" for a client. *Id.* at 1381. The Federal Circuit has identified several situations that may qualify as "competitive decisionmaking," including "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution[.]" *Id.* However, not all involvement in patent prosecution qualifies as "competitive decisionmaking" under the *Deutsche Bank* standard. The Federal Circuit has distinguished administrative and oversight duties from activities in which counsel plays a "significant role in crafting the content of patent applications[,]" *id.* at 1379-80, which poses a greater risk of inadvertent disclosure. Because of the fact-specific nature of this inquiry, a "case-by-case"—*i.e.*, counsel-by-counsel—determination of competitive decisionmaking is necessary. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir. 1984).

Second, once a party has established a risk of inadvertent disclosure, it must demonstrate that the proposed prosecution bar is reasonable in scope. *Deutsche Bank*, 605 F.3d at 1381. With

respect to this second prong, "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* If the moving party makes this showing, the court must weigh the risk of inadvertent disclosure against the potential injury to the party deprived of its counsel of choice. *Id.*

This District has approved a Model Protective Order ("Model PO") that governs discovery unless the court enters a different protective order. *See* U.S. District Court for the Northern District of California's Stipulated Protective Orders webpage, at http://cand.uscourts.gov/stipprotectorder ("The protective orders on this page are court-approved model forms to which counsel may stipulate in a particular case."); N.D. Cal. Patent L.R. 2–2 ("The Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order."). The Model PO provides that:

> Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or inter partes reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

In the ordinary course, "the court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp.*, No. 11-cv-2284, (CW) (LB), 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011).

## DISCUSSION

### I. THE PARTIES' ARGUMENTS

KSEA contends that a patent prosecution bar is unnecessary in this case because there is no risk that any information that could trigger a bar will be disclosed. In KSEA's view, patent prosecution bars are only relevant to information about new inventions and technology still under development, while discovery in the instant case pertains only to information about existing patents and products already subject to widespread public use whose structural and operational information easily could be discovered through reverse engineering. (Dkt. No. 94 at 4-5.) Because the gravamen of KSEA's argument is that the Court should reject a patent prosecution bar altogether, it does not address the scope of a bar in its motion. In its reply, however, while reiterating its position that a prosecution bar is unnecessary, KSEA also argues that in the event the Court deems a prosecution bar appropriate, any such provision should be limited to information regarding "source code" and "future products not yet released," and should only bar "competitive decisionmakers" to be identified by the Court and the parties. (Dkt. No. 100 at 8-10.) During oral argument, KSEA reiterated this position.

Stryker, for its part, asks the Court to reject KSEA's proposed protective order *sans* prosecution bar and to enter an order that includes the same prosecution bar provision included in this District's Model PO. (*See* Dkt. No. 98 at 14-15.) In support of its request, Stryker contends that Plaintiff's litigation firm, the St. Onge Steward Johnson & Reens LLC firm, and its member Wesley W. Whitmyer, Jr., are engaged in competitive decisionmaking within the meaning of *Deutsche Bank*. (*See* Dkt. No. 98 at 5-6, 12-13.) Stryker has submitted numerous examples of documents that Whitmyer has filed during the course of prosecuting patents related to the subject matter of this case. (*See, e.g.*, Dkt. Nos. 98-3, 98-4, 98-5.) Stryker has also submitted documentary evidence indicating that Whitmyer and the St. Onge firm prosecuted the very patents asserted in this case and have continued to file amendments to those patents in favor of their patentability. (Dkt. No. 98 at 6; *see, e.g.*, Dkts. No. 98-3, 98-4, 98-5, 98-16.) As far as the scope of the proposed prosecution bar, Stryker contends that the subject matter of this litigation properly triggers such a bar for two reasons: first, because information that will be revealed during the

course of discovery in the form of software design documents and specifications remains confidential insofar as it cannot be discovered in existing patents or through reverse engineering (*id.* at 9-10); and second, because in addition to information about the currently patented products, KSEA also seeks information regarding "future design, development and manufacture" and "change[s] or proposed change[s] to the design of each product." (Dkt. No. 98-28 at 10.)

## II. ANALYSIS

Stryker has met its burden of showing good cause for the inclusion of a patent prosecution bar in the protective order governing information exchanged throughout this litigation.

First, Stryker has made a sufficient showing that KSEA's counsel, namely, Wesley Whitmyer, Jr., is engaged in competitive decisionmaking for Plaintiff based on the myriad examples of his participation in prosecuting patents for KSEA in subject matters related to the patents at issue in this case, including post-approval amendments and other arguments in favor of patentability. (*See, e.g.*, Dkt. Nos. 98-3, 98-4, 98-5.) *See Deutsche Bank*, 605 F.3d at 1381 (noting that participation in amendment of patent claims may constitute competitive decisionmaking). The most recent example of Whitmyer's active patent prosecution on KSEA's behalf dates from May of 2014, several months after this case commenced. (Dkt. No. 98-24.) Far from mere administrative or oversight duties, Whitmyer's filing of such amendments indicates substantial involvement in prosecution—precisely the type of activity that poses a high risk of inadvertent disclosure under the *Deutsche Bank* standard. *See* 605 F.3d at 1379-80; *see, e.g., Ameranth, Inc. v. Pizza Hut, Inc.*, No. 3:11-cv-01810-JLS-NLS, 2012 WL 528248, at *5-6 (S.D. Cal. Feb. 17, 2012) (noting that litigation counsel's responsibilities, including amending claims, qualified as competitive decisionmaking). Indeed, in its reply, KSEA appears to concede that Whitmyer is engaged in competitive decisionmaking for the company. (*See* Dkt. No. 100 at 6.) The Court agrees that based on Whitmyer's participation in prosecuting the patents-in-suit and other related patents for KSEA, sensitive information received from Defendant in this action might unintentionally be used in prosecuting on-going patent applications for Plaintiff.

Second, Stryker has also met its burden of showing that the proposed bar is reasonable in scope. *See Deutsche Bank*, 605 F.3d at 1379-80. Stryker's proposed bar is identical in scope and

duration to the Model PO, which prohibits any individual who receives access to information designated "Highly Confidential" information—either marked "for attorneys' eyes only" or "source code"—from "directly or indirectly drafting, amending, advising, or otherwise affecting the scope of maintenance of patent claims" that "relat[e] to the subject matter of this action" for two years after the conclusion of this litigation. (Dkt. No. 98-31 at 9-10.) This provision is presumed to be reasonable, *see Kelora Sys.*, 2011 WL 6000759, at *2, and courts in this district and elsewhere have found that it reasonably reflects the risks of disclosure of confidential information. *See, e.g.*, *id.*; *Applied Signal Tech. v. Emerging Mkts. Commc'ns*, No. C-09-02180 SBA (DMR), 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011); *Ameranth*, 2012 WL 528248, at *5-6. So it is here: allowing KSEA's counsel to have access to Stryker's confidential information about camera and operating room technology while simultaneously continuing to amend or otherwise prosecute patents in the same field is just the type of unfair competitive advantage that a prosecution bar is designed to avoid. *See Deutsche Bank*, 605 F.3d at 1379 ("The concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represent the same client in prosecuting patent applications before the PTO.").

As discussed at oral argument, however, the Court will modify the protective order to apply in this case to address Plaintiff's concern that not all information designated by Defendant as "highly confidential" should trigger a prosecution bar. Accordingly, the first sentence of Stryker's proposed provision shall be amended as follows:

> Absent written consent from the Producing Party, any individual who receives access to information marked "HIGHLY CONFIDENTIAL – SUBJECT TO PATENT PROSECUTION BAR" shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").

This amendment requires Defendant to distinguish between "highly confidential information" and "highly confidential information" that, according to Defendant, should result in application of the patent prosecution bar. If the parties thereafter dispute whether information in a particular document should trigger the bar, they should then follow the dispute resolution process set forth in

the protective order. If, ultimately, agreement cannot be reached, then they can bring the dispute to the Court's attention. The advantage to such a process is that the Court will have before it the actual information at issue and can decide whether the particular information should trigger the prosecution bar.

The Court acknowledges that such a process means that litigation counsel that litigate the applicability of the patent prosecution bar will themselves be subject to the bar if the Court determines that the bar should apply to a particular type of information. Plaintiff has not shown, however, that it has a legitimate need to have every single one of its attorneys exempt from a patent prosecution bar, let alone a need that outweighs Defendant's need to protect against inadvertent disclosure.

## CONCLUSION

For the reasons discussed above, the Court concludes that Stryker has shown good cause for the inclusion of a patent prosecution bar in the parties' protective order with the modification explained by the Court at oral argument and above. Accordingly, KSEA's motion is DENIED. The Court understands that the parties have otherwise agreed to the terms of a protective order. Accordingly, they shall file a stipulated protective order that is consistent with this Order.

**IT IS SO ORDERED**.

Dated: November 21, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge