UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL STORZ ENDOSCOPY-AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION, et al.,<br><br>Defendants. | Case No. 14-cv-00876-RS   (JSC)<br><br>**ORDER RE: MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>Re: Dkt. No. 168 |

Plaintiff Karl Storz Endoscopy-America, Inc. ("KSEA") sues its competitor, Stryker Corporation and Stryker Communications, Inc. (together, "Stryker"), for infringement of five of KSEA's patents directed at devices and components used in medical imaging devices and operating room communication technology. The matter has been referred to the undersigned magistrate judge for discovery purposes. (Dkt. No. 99.)[1] Now pending before the Court is Stryker's motion for leave to amend its invalidity contentions, in which Stryker seeks to add references to (1) materials it cited in its petitions for Inter Partes Review ("IPR") and (2) a product manual for one of KSEA's products that a third party recently produced. (Dkt. No. 168.) KSEA concedes that Stryker has good cause to include the product manual amendments, but opposes the remaining amendments. In addition, Stryker filed an administrative motion to seal portions of its motion and certain documents submitted in connection with its briefing. (Dkt. No. 167.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on May 12, 2016, the Court GRANTS Stryker's motion for leave to amend its invalidity contentions and GRANTS IN PART the administrative motion to file under seal.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

KSEA initiated this case on February 26, 2014, alleging that Stryker's medical imaging devices and operating room communication technology infringed KSEA's patents. (Dkt. No. 1.) In an amended complaint filed in June 2014, KSEA alleged that Stryker infringed five patents.[2] (Dkt. No. 67.) Upon initially receiving service of summons in this action in March 2014, Stryker retained litigation counsel, which began to search for prior art references, analyze those references, and develop invalidity positions. (Dkt. No. 168-1 ¶ 15.) Stryker also hired a third-party search firm to locate prior art. (*Id.*)

In its initial infringement contentions served in August 2014, KSEA asserted 93 claims over the five patents-in-suit. Stryker served its initial invalidity contentions on October 31, 2014. (*Id.* ¶ 16.) Thereafter, Stryker continued its efforts to locate prior art. (*Id.* ¶ 16.) Through these continued efforts, in mid-January 2015 Stryker discovered two new prior art references that it had not included in its contentions—U.S. Patent Nos. 5,767,897 ("Howell 897") and 5,781,442 ("Engleson 442"). (*Id.* ¶ 17.)

Despite discovering the new references, Stryker did not move for leave to amend its invalidity contentions at that time. Instead, on February 18 and 19, 2015, Stryker filed in the Patent Trial and Appeal Board ("PTAB") eight petitions for IPR against the patents-in-suit. (*Id.* ¶ 18.) These petitions and supporting declarations included information from Stryker's initial invalidity contentions in this case, as well as the two new prior art references, and new combinations of, and additional disclosures from, existing references. (*Id.* ¶¶ 19-22.) Also on February 19, Stryker moved to stay this litigation pending the PTAB's IPR review. (Dkt. No. 119.) Stryker noticed the motion to stay for hearing on March 26, 2015. (*See id.* at 1.) By letter of March 10, 2015, Stryker notified KSEA that it intended to incorporate its IPR petitions "and all supporting declarations and exhibits" into its invalidity contentions, but declined to move for leave to amend at that time due to its belief that "this litigation should be stayed, at least in part to spare

---

[2] Specifically, the patents-in-suit include United States Patent Nos. 8,069,420 ("the '420 patent"), 7,461,310 ("the '310 patent"), 7,821,530 ("the '530 patent"), 7,844,657 ("the '657 patent"), and 8,439,821 ("the '821 patent"). (Dkt. No. 67 ¶¶ 11-15.)

1  the parties and the Court the burden of addressing such motions and any possible briefing." (Dkt.
2  No. 168-2 at 2.) On March 30, 2015, the district court stayed the case pending IPR. (Dkt. No.
3  138.)

4  The PTAB (1) denied Stryker's IPR petitions for the '310, '530, '657, and '821 patents, (2)
5  granted Stryker's IPR petitions for the '420 patent on 42 of the 44 challenged claims, and (3)
6  denied Stryker's IPR petitions for the '420 patent on 2 of the 44 challenged claims. (*See* Dkt. No.
7  157 at 2.) KSEA disclaimed the 42 claims from the '420 patent for which IPR had been instated,
8  and the PTAB granted KSEA's request for adverse judgment and terminated the IPR proceedings
9  in December 2015. (*Id.*) Upon KSEA's motion, the district court lifted the stay on January 5,
10  2016 and directed the parties to file a joint case management statement. (Dkt. No. 151.) In their
11  statement filed January 28, 2016, Stryker represented that it planned to seek leave to amend its
12  invalidity contentions to incorporate the supporting declarations and exhibits from its IPR
13  petitions. (*Id.* at 4.) The statement noted that KSEA planned to oppose such motion. (Dkt. No.
14  168-1 ¶ 24; Dkt. Nos. 168-6, 168-7.)

15  In March 2016, a third party produced a product manual for one of KSEA's products, the
16  RGB Spectrum QuadView *Plus* Video Windowing System User Manual (the "RGB Spectrum
17  Manual"), in response to Stryker's third-party subpoena. (Dkt. No. 168-3.) Stryker had
18  previously made several requests directly to KSEA for information or documents that would have
19  included the RGB Spectrum Manual, including its first set of discovery requests served in June
20  2014 and a specific request for information about KSEA's installation of the RGB Spectrum
21  QuadView at the particular third party's location in September 2014. (Dkt. No. 168-1 ¶ 24; Dkt.
22  Nos. 168-6, 168-7, 168-10.)

23  Stryker now moves to amend its invalidity contentions to incorporate additional materials
24  it relied on in its eight petitions for IPR of the patents-in-suit—specifically, two newly-discovered
25  prior art references and additional disclosures and obviousness combinations from references it
26  identified and disclosed in its original contentions—and to add references to the RGB Spectrum
27  Manual. (Dkt. No. 168.)
28  //

**DISCUSSION**

**I.    Motion to Amend Invalidity Contentions to Add IPR Materials**

KSEA does not oppose the addition of the RGB Spectrum Manual. (Dkt. No. 181 at 4 n.1.) Thus, the sole question before the Court is whether Stryker has good cause to amend its invalidity contentions to include the new prior art references and additional disclosures and combinations of existing references that it relied on in its IPR petitions.

A.    <u>Legal Standard</u>

The Patent Local Rules exist to further the goal of full and timely discovery and to provide all parties with adequate notice and information with which to litigate their cases. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006). The Rules "require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). Likewise, the rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *Id.* at 1366 n.12. "Although federal courts are generally lenient in allowing parties to amend pleadings, such is not the case with amending preliminary infringement [and invalidity] contentions." *Berger v. Rossignol Ski Co.*, No. 05-02522, 2006 WL 1095914, at *2 (N.D. Cal. Apr. 25, 2006) (citation omitted).

Specifically, Patent Local Rule 3-6 allows a party to amend its infringement or invalidity contentions only upon a showing of good cause:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b) Recent discovery of material, prior art despite earlier diligent search; and
>
> (c) Recent discovery of nonpublic information about the Accused

4

> Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L-R 3-6.

The moving party has the burden of demonstrating good cause. *O2 Micro*, 467 F.3d at 1366. "[A]s a general rule, mistakes or omissions are not by themselves good cause." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC-JSC, 2013 WL 5368053, at *16 (N.D. Cal. Sept. 25, 2013) (citation omitted). Instead, the good cause inquiry is two-fold, asking: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted. *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014)(citation omitted); *Barco N.V. v. Tech. Props. Ltd.*, NO. 08-CV-05398, 2011 WL 3957390, at *1 (N.D. Cal. Sept. 7, 2011); *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009). Diligence is "the critical issue" in the good cause determination. *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C08-02807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009). "[T]he diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-02226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). The party seeking to amend its contentions bears the burden of establishing diligence. *CBS Interactive*, 257 F.R.D. at 201 (citing *O2 Micro*, 467 F.3d at 1366-67).

If the court determines that the moving party was not diligent, the inquiry may end there. *See Acer*, 2010 WL 3618687, at *5. However, the court retains discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice to the opposing party. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *5-6 (N.D. Cal. Nov. 15, 2012); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-cv-3724 CW, 2013 WL 5609325, at *3 (N.D. Cal. Oct. 11, 2013). Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders. *See WhatsApp Inc. v. Intercarrier Commc'ns, LLC*, No. 13-cv-04272 JST, Dkt. No. 81, at 7 (N.D. Cal. Sept. 3, 2014).

In considering good cause, courts also examine other factors including "the relevance of

the newly discovered prior art, the difficulty in obtaining such prior art, and whether the motion appears to be motivated by gamesmanship." *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C 04-03526 SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008) (citation omitted); *see also Fujifilm*, 2014 WL 491745, at *3 (same); *Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259, at *2-3 (N.D. Cal. May 17, 2007) (same).

B. <u>Good Cause</u>

1. *Stryker's Diligence*

As the party seeking to amend its invalidity contentions, Stryker bears the burden of demonstrating its diligence. *CBS Interactive*, 257 F.R.D. at 201 (citation omitted); *O2 Micro*, 467 F.3d at 1366-67.

a. *Diligence in Discovering the New Information*

Stryker began its prior art search—both through counsel and a third-party search firm—in March 2014, served its invalidity contentions in October 2014 but continued its search, discovering the new references in January 2015, three months later. The following month, Stryker filed IPR petitions using the new materials, informed KSEA of its intent to add the new materials to its invalidity contentions, then moved to stay this case. The same month the case was reopened, Stryker reiterated its intent to seek leave to amend, and it filed the instant motion three months later.

Stryker concedes that the newly-discovered prior art references were available in the public domain when Stryker served its initial invalidity contentions, but emphasizes that it did not find them until several months later because it was tasked with an unreasonably burdensome search. On its own, Stryker's contention that it "diligently continued to locate and analyze prior art references" because it its attorneys and third-party search firm engaged in efforts to find prior art even after it served its initial contentions is weak. There are no details about how many attorneys were engaged in the prior art search, how many hours the attorneys or search firm staff spent searching, or where they searched, which leaves the Court little foundation on which to base a finding of diligence. *See West v. Jewelry Innovations, Inc.*, No. C 07-1812 JF (HRL), 2008 WL 4532558, at *3 (N.D. Cal. Oct. 8, 2008) (finding that the defendant did not establish diligence of

6

its prior art search because it did "not provide any information about when or why it began the inquiries, how it inquired, who its contacts in the industry were, or even[ ] what it inquired about"); *Streak Prods., Inc. v. Antec, Inc.*, No. C09-04255 RS (HRL), 2010 WL 3515752, at *2 (N.D. Cal. Sept. 8, 2010) (requiring defendant to submit declarations describing their prior art search where the motion to amend offered only conclusory statements of diligence); *cf. Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844-JST, 2014 WL 6879428, at *3 (N.D. Cal. Dec. 5, 2014) (disagreeing that defendants' statements' showing diligence were "conclusory" where the defendant "filed declarations providing a detailed description of its search efforts, including the employment of an experienced professional search firm"); *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) (disagreeing that defendants' statements showing diligence were "conclusory" where defendants "provided a detailed time-line showing that they made reasonable efforts to discover this information"). But Stryker's initial invalidity contentions themselves belie a finding that its search was not diligent: they included over 500 prior art references among the 31 claim charts and 400 additional pages of analysis addressing KSEA's claims. It strains credulity to imagine that Stryker was not diligent in uncovering and evaluating this many references. For this reason, unlike *Streak Products*, declarations describing the search in detail are not necessary. *Cf. Streak Prods.*, 2010 WL 3515752, at *2.

Moreover, Stryker argues that the scope of KSEA's initial infringement contentions—that is, 93 patent claims across five patents—and the concomitant scope of the prior art search Stryker needed to undertake, was so large that it imposed an unreasonable burden on Stryker. And indeed, other courts in this District have found good cause to amend invalidity contentions due to the large scope of the initial prior art search when it involved nearly half as many claims as this case did. *See, e.g.*, *Network Protection Scis.*, 2013 WL 1949051, at *2. In *Network Protection Sciences*, the court also reasoned that there was good cause to amend because the defendant "commissioned a new, broader prior art search" following the court's adoption of the plaintiff's proposed construction of several disputed terms in a claim construction order. 2013 WL 1949051, at *2. Such is not the case here. Ultimately, however, the *Network Protection Sciences* court

7

emphasized that "[u]nsuccessful prior art searches, standing alone, do not demonstrate an absence of diligence." *Network Protection Scis.*, 2013 WL 1949051, at *2. Other courts have reached similar conclusions. *See, e.g.*, *Fujifilm Corp.*, 2014 WL 491745, at *4 (permitting amendment to add prior art references found later in discovery even though they might have been found earlier where the defendant was evaluating "hundreds of other references" for the five patents at issue in the case). In response, KSEA appears to argue that the task could not have been all that burdensome, since Stryker was able to identify and analyze so many references in its initial contentions, and thus, it must not have been diligent in failing to identify others. But to adopt this argument would merely encourage inefficient prior art searches at the front end in order to save room later for a renewed search and a finding of diligence; this cannot be what the court's "good cause" analysis intends.

The Court is also not persuaded by KSEA's contention that a diligent search necessarily would have uncovered these publicly available patents. Although a diligent search should reveal well-known prior art references, *see Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. 12-cv-05791-WHA, 2014 WL 186405, at *2 (N.D. Cal. Jan. 16, 2014), there is no suggestion that Howell 897 and Engleson 442 are well known. KSEA insists that a reasonably diligent search would have uncovered these patents because (1) one of Stryker's own patent applications cited Howell 897; and (2) Engleson 442 is the parent of two patent applications, WO 96/36923 ("Engleson 923") and WO 00/03344 ("Engleson 344"), that Stryker's original invalidity contentions identified and analyzed, so a thorough review of Engleson 923 and 344 would have led Stryker to Engleson 442 earlier. While there is some suggestion that they might have been able to discover them due to hints in these other prior art references that Stryker cited in its contentions, these hints do not indicate that the references were so obvious and straightforward to discover that a diligent search necessarily would have revealed them. And indeed, given the scope of the prior art search that KSEA's infringement contentions required, Stryker cannot reasonably have been expected to pick up every last crumb dropped by the more than 500 references it cited. Ultimately, the "good cause requirement does not require perfect diligence." *Fujifilm*, 2014 WL 491745, at *4. "Although hindsight is often '20/20,' identifying and evaluating prior art can be

8

1  difficult, and new information learned in discovery can lead a party to understandably reevaluate
2  evidence found earlier." *Id.* (citation omitted). Thus, the mere possibility that Stryker might have
3  discovered the references earlier does not defeat its diligence.

4  KSEA's other arguments to the contrary are equally unavailing. KSEA urges that "Stryker
5  cannot credibly contend that any action by KSEA prevented it from discovering Howell 897
6  before it served its original contentions." (Dkt. No. 181 at 7, 9.) But KSEA has not cited a single
7  case that holds that the diligence standard requires showing that the opposing party's conduct
8  barred discovery or that a showing of the opposing party's bad faith is even relevant to the
9  diligence analysis, and the Court has found none.

10  The cases from other Districts on which KSEA relies do not persuade the Court otherwise.
11  KSEA contends that the court denied leave to amend under similar circumstances in *Imperium IP*
12  *Holdings (Cayman), Ltd. v. Samsung Elecs. Co. Ltd.*, No. 4:14-CV-371, 2016 U.S. Dist. LEXIS
13  40504, at *4-5 (E.D. Tex. Mar. 28, 2016). There, the court denied leave to amend to incorporate
14  materials relied on in IPR proceedings on the grounds that the defendants had "not explained why,
15  with reasonable diligence, they could not have discovered the proposed references prior to the
16  deadline for filing invalidity contentions." *Id.* It appears that the only justification the defendants
17  offered there was that the subject matter of the patents-in-suit was "complex and crowded[,]"
18  which the court found insufficient to justify a late amendment. *Id.* Here, in contrast, Stryker has
19  explained that it did not find the new references despite its search due to the scope of the
20  infringement contentions to which it was tasked with responding.[3] KSEA's reliance on *Warner*
21  *Chilcott Co. v. Mylan Inc.*, No. 13-6560 (MLC), 2015 WL 3630970, at *7 (D.N.J. June 10, 2015),
22  fares no better. There, the court denied the defendant's request to amend its contentions to include
23  references it relied on in IPR proceedings. *Id.* at *2. But that case involved a single patent, in
24  contrast to the five patents at issue here; thus, *Warner Chilcott* is inapposite to the scope-of-the-

---

[3] In addition, in *Imperium IP Holdings* the court also couched its denial of leave to amend on the prejudice to the plaintiff because the request to amend came after the court's order on claim construction and would impact on trial and discovery dates. *Imperium IP Holdings*, 2016 U.S. Dist. LEXIS 40504, at *5-6. There is no such prejudice here, as will be discussed in more detail below.

9

search argument that Stryker advances here.  Moreover, unlike this case, where Stryker attests that it discovered the references at issue precisely because its counsel and third-party search firm continued the same prior art search even after filing its initial contentions, in *Warner Chilcott* the defendants hired a third party for the first time after serving initial contentions, and he performed targeted searches specifically for the purpose of discovering references for the IPR proceedings. *Id.*  Neither case defeats Stryker's showing of diligence.

For each of these reasons, Stryker has met its burden of establishing its diligence in discovering the new prior art references it now seeks to add.

Stryker also seeks to add additional disclosures from references it identified in its original contentions and new obviousness combinations consisting of prior art references it already identified or analyzed in those contentions.  As for these proposed amendments, Stryker appears to rely exclusively on *Network Protection Sciences* and the proposition that the scope of KSEA's infringement contentions placed an unreasonably high burden on Stryker, which cannot have been expected to identify every necessary disclosure and every obviousness combination by the deadline.  *See* 2013 WL 1949051, at *2.  In contrast to the new prior art references, which Stryker attests to discovering in January 2015, Stryker has not provided any information about when or how it realized that these additional disclosures or combinations based on existing references were relevant or necessary.  While the Court recognizes that Stryker faced a significant uphill battle in responding to broad infringement contentions, this does not excuse it from meeting its burden to prove diligence.  It has not done so with respect to this category of proposed amendments.

In short, Stryker has established diligence in discovering the new prior art references, but not in discovering the additional disclosures and obviousness combinations based on references it identified and cited in its initial invalidity contentions.

                b.      *Diligence in Moving for Leave to Amend*

Stryker has also established diligence in moving to amend once it discovered the new prior art references at issue.  In total, Stryker filed its motion nearly 15 months after it initially discovered the new prior art references.  But Stryker's motion to stay was pending for a little over one of those months, and the case was stayed for nine.  In effect, then, four-plus months of active

10

1    litigation passed before Stryker moved to amend.  *See Netflix, Inc. v. Rovi Corp.*, No. 11-cv-
2    06591-PJH (DMR), 2015 U.S. Dist. LEXIS 71330, at *14-15 (N.D. Cal. June 2, 2015) (declining
3    to factor time passed while case was stayed into the diligence analysis).  While some courts have
4    expressed concern when parties wait nearly three months to move to amend, *see, e.g.*, *O2 Micro*,
5    467 F.3d at 1367 (affirming district court's holding that three months delay showed lack of
6    diligence); *Verinata Health v, Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 789197, at
7    *3 (N.D. Cal. Apr. 23, 2014) (finding delay of "almost three months" improper); *Apple, Inc. v.
8    Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012)
9    (finding "over two and a half months" too long), several courts in this District have found that
10   time periods of three months and longer can be reasonable for seeking to amend contentions.  *See,
11   e.g.*, *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-2024 RMW, 2014 WL 3728482, at *2 (N.D.
12   Cal. July 28, 2014) (finding three months diligent); *Nuance Commc'ns, Inc. v. Abbyy Software
13   House*, No. C 08-02912 JSW (MEJ), 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012) (finding
14   a "few months" diligent); *Yasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, No. C09-05897 RS
15   (HRL), 2011 WL 940263, at *3-4 (N.D. Cal. Feb. 18, 2011) (finding four months diligent).

16        KSEA insists that Stryker was not diligent because it could have sought to amend its
17   contentions (1) before it filed IPR petitions; (2) before the district court stayed the case; and (3)
18   immediately after the case reopened.  Notably, none of the cases that KSEA cites for the
19   proposition that Stryker should have moved for leave to amend in the wake of discovering the
20   prior art references instead of waiting until after the IPR petitions were decided involved a stay, as
21   here.  *Cf. Synopsys Inc. v. Mentor Graphics Corp.*, No. 12-cv-06467-MMC (DMR), 2014 WL
22   1477917, at *4 (N.D. Cal. Apr. 14, 2014); *Par Pharm., Inc. v. Takeda Pharm.*, No. 5:13-cv-
23   01927-LHK-PSG, 2014 WL 3704819, at *2 (N.D. Cal. July 23, 2014); *Genentech, Inc. v. Trs. of
24   Univ. of Pa.*, No. 5:10-cv-2037, 2011 WL 3204579, at *1-2 (N.D. Cal. July 27, 2011).  In any
25   event, while Stryker might have done so, its contrary decision does not undermine its diligence
26   under the circumstances presented here.  Stryker notified KSEA in writing of its intent to amend
27   its contentions to incorporate the new IPR references within two months of discovering them and
28   within one month of filing the petitions for IPR.  In early March 2015, while its motion to stay the

United States District Court
Northern District of California

11

1  litigation was pending, Stryker notified KSEA that in light of the pendency of the motion, and "to
2  spare the parties and the Court the burden of addressing such motions and possible briefing,"
3  Stryker would not move to amend its contentions at that time. (Dkt. No. 168-2.) That decision
4  was reasonable and the record does not reflect that KSEA responded to the letter or otherwise
5  advised Stryker that it objected its resource-saving decision. Once the case reopened in January
6  2016, Stryker notified both KSEA and the Court of its intent to move to amend in the case
7  management conference statement filed later that same month. Some courts in this District have
8  held that mere notice, short of an actual motion, can be sufficient for diligence. *Bd. of Trs. of
9  Leland Stanford Junior Univ. v. Roche Molecular Sys.*, No. C 05-04158 MHP, 2008 WL 624771,
10 at *3 (N.D. Cal. Mar. 4, 2008) ("This court has held that notice can be sufficient for good cause.")
11 (citation omitted); *see, e.g.*, *id.* (concluding that the plaintiff was diligent enough because, while it
12 did not file a motion to amend for several months, it notified defendant of the basis of the
13 amendment immediately by requesting discovery); *IXYS Corp. v. Advanced Power Tech., Inc.*,
14 321 F. Supp. 2d 1133, 1159 n.19 (N.D. Cal. 2004) ("While [defendant's] motion makes clear that
15 it has not complied fully with the letter of the local rules, the court finds that [plaintiff] has long
16 been on notice of these potential combination[s]."). So too here.

17                                         * * *

18 Stryker has met its burden of establishing diligence in discovering the new prior art
19 references and moving to amend to include them in their contentions, but has not established
20 diligence as to the additional disclosures and obviousness combinations of references it identified
21 in its initial disclosures.

22                    2.    *Prejudice to KSEA*

23 While the amendment inquiry generally ends when the moving party fails to show
24 diligence, *see Acer*, 2010 WL 3618687, at *5, "even if the movant was arguably not diligent, the
25 Court may still grant leave to amend." *OpenDNS, Inc. v. Select Notifications Media, LLC*, No.
26 C11-05101 EJD (HRL), 2013 WL 2422623, at *2 (N.D. Cal. June 3, 2013) (citation omitted);
27 *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C13-159 CW, 2013 WL 5955548, at *1 (N.D. Cal.
28 Nov. 16, 2011); *see, e.g.*, *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724-CW, 2013

1   WL 5609325, at *3 (N.D. Cal. Oct. 13, 2011) (despite lack of diligence, permitting amendment
2   due to lack of prejudice); *Apple v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL
3   5632618, at *6 (N.D. Cal. Nov. 15, 2012)(same); *Leland Stanford Junior Univ.*, 2008 WL 624771,
4   at *3 (same).

The Court finds that none of Stryker's proposed amendments will prejudice KSEA. An upcoming discovery deadline tends to loom large in the prejudice analysis. *See, e.g.*, *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST (NC), 2014 WL 554561, at *3 (N.D. Cal. Feb. 7, 2014) (denying motion to amend due to prejudice to the opposing party where fact discovery closed two days before the defendant served its proposed amended contentions and the deadline for dispositive motions was "quickly approaching"); *EON Corp. IP Holdings LLC v. Aruba Networks, Inc.*, No. 12-cv-01011-JST, 2013 WL 6001179, at *3 (N.D. Cal. Nov. 12, 2013) (denying motion to amend due to prejudice to the opposing party because "[f]act discovery closes shortly"); *Abbott Diabetes Care Inc.*, 2007 WL 221029, at *2 (finding prejudice where two months remained in discovery). Here, in contrast, the case is in the early stages of litigation. The district court has not yet set a date for the close of fact discovery, nor for the close of expert discovery or trial. As a result, "the Patent Local Rules' concern with parties sandbagging opponents late in the discovery period is [not] at issue." *Fujifilm*, 2014 WL 491745, at *6 (citing *Yodlee*, 2007 WL 1454259, at *2). Nor do Stryker's proposed amendments conflict with the Patent Local Rules' goal of "requir[ing] parties to crystallize their theories of the case early in the litigation." *O2 Micro*, 467 F.3d at 1366 n.2. Courts have found no prejudice where, as here, the proposed amendments did not pose a risk to discovery and motion deadlines or the trial schedule. *See, e.g.*, *Verinata Health*, 2014 WL 1648175, at *3 (no prejudice where the deadlines for fact discovery, expert discovery, and trial were four, seven, and ten months away, respectively); *Golden Hour Data Sys.*, 2008 WL 2622794, at *4 (finding no prejudice where three months remained in fact discovery); *Yodlee*, 2007 WL 1454259, at *3 (finding no prejudice where two months remained in fact discovery).

KSEA argues that it will be unduly prejudiced because of the manner in which Stryker presented its proposed amendments—that is, because KSEA did not see the proposed changes

13

1    until this motion and many of the changes, particular the proposed obviousness combinations, are

2    intermingled with analyses that Stryker asserted in its original contentions.  In KSEA's view, this

3    is prejudicial because its experts will not be able to meaningfully prepare to rebut those

4    contentions.  But KSEA has a complete copy of the proposed amendments now.  And, as

5    discussed above, there is no deadline for the end of expert discovery, so the argument that the

6    experts will not be able to meaningfully rebut the contentions is a straw man.

7          KSEA next insists that it will be unduly prejudiced because the claim construction

8    discovery period has passed and the parties have already filed opening claim construction briefs.

9    The Local Patent Rules expressly anticipate amendments on the heels of claim construction, albeit

10   when the court's chosen construction is different from that proposed by the party seeking

11   amendment.  *See* N.D. Cal. Patent L.R. 3-6; *see, e.g.*, *Positive Techs.*, 2013 WL 322556, at *1.

12   Thus, the timing of claim construction, taken alone, does not necessarily mean there is prejudice.

13   But the scenario at issue here does not involve amending to adapt to the court's claim construction

14   order.  Instead, the alleged prejudice is that claim construction briefs have already been filed and

15   the claim construction hearing is fast approaching.  Courts have found prejudice where parties

16   move to amend contentions after they have already disclosed and argued claim construction.  But

17   the cases from other Districts that KSEA cites are inapposite.  For example, in *Imperium IP*

18   *Holdings*, the court concluded that the proposed amendments would prejudice the plaintiff because

19   the defendant did not move to amend until well after the court had already issued its order on

20   claim construction.  2016 U.S. Dist. LEXIS 40504, at *6.  Not so here.  In *Innovative Display*

21   *Technologies LLC v. Acer Inc.*, No. 2:13-cv-00522-JRG, 2014 WL 2796555, at *2 (E.D. Tex. June

22   19, 2014), the court declined to permit amendments to proposed invalidity contentions that came

23   on the eve of claim construction because the prejudice in forcing the plaintiff to "spend more time

24   and resources in modifying its existing construction" "on balance" outweighed the benefit to the

25   defendant, who had failed to establish diligence or explain the importance of the new references.

26         But here, KSEA has not identified how any of the proposed amendments will impact its

27   position at claim construction.  *See Apple*, 2012 WL 1067548, at *7 n.4 (calling "less persuasive"

28   the plaintiff's argument that it would be prejudiced by post-claim construction amended invalidity

14

contentions because the plaintiff had not established that the amendments touched on any of the terms at issue in the construction). Even assuming that some of the proposed amendments affect claim construction, the Court still does not see prejudice worthy of barring the amendments: KSEA has been on notice of the amendments, claim construction has not yet occurred, and the door to fact discovery remains wide open.

Finally, KSEA argues that it would be unduly prejudiced if Stryker is permitted to add the IPR references because it will be "force[d] to incur the unnecessary expense of opposing arguments that it already defeated before the PTAB" applying a lower standard for proving unpatentability than applies here. (Dkt. No. 181 at 12.) In other words, KSEA argues that because they already "won this battle," the IPR materials are irrelevant and therefore not material to the inquiry, which should defeat a finding of good cause. KSEA does not cite any authority for the proposition that raising in district court invalidity arguments that were unsuccessful before the PTAB prejudices a plaintiff or that such arguments are immaterial to invalidity in the district court litigation.

Stryker, on the other hand, contends that the statutory scheme creating PTAB IPR review and two recent cases from the Federal Circuit establish that the PTAB's decision not to institute an IPR proceeding has no preclusive effect on a defendant's ability to argue for invalidity on the same grounds in district court. *See HP Inc. v. MPHJ Tech. Invs. LLC*, No. 2015-1427, 2016 WL 1320920 (Fed. Cir. Apr. 5, 2016); *Shaw Indus. Grp. v. Automated Creel Sys., Inc.*, No. 2015-1116, 2016 U.S. App. LEXIS 5352, at *12-15 (Fed. Cir. Mar. 23, 2016);  KSEA does not disagree about the lack of preclusive effect, but argues that the IPR denial should nonetheless factor into the Court's decision. Even if it did, however, it does not show any prejudice. KSEA might believe that Stryker has no chance of prevailing on its arguments, but that does not bar amendment.

At bottom, Stryker's prejudice arguments boil down to a complaint that the amendment will cause KSEA to perform more work than it would have to perform otherwise. For example, KSEA complains that adding the IPR materials will require "multiple expert reports and more complicated, extensive expert discovery related to the parties' invalidity arguments" and summary judgment motions that encompass IPR materials. (Dkt. No. 181 at 14-15.) But that is not

15

prejudice. *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 n.2 (N.D. Cal. 2011) ("Generally, the issue is not whether the defendant would be required to engage in additional work in response to newly amended claims. The question is what incremental prejudice results from the *delay* in asserting those claims (e.g., inability to complete discovery because of approaching trial date).") (emphasis in original); *see also Compression Labs, Inc. v. Okla. State Univ. Educ. & Research Found., Inc.*, No. CIV. 93-20622 RPA, 1995 WL 241438, at *3 (N.D. Cal. Apr. 19, 1995) (in the context of a Rule 15 motion to amend, noting that the mere "prospect of additional discovery . . . does not constitute undue prejudice") (citation omitted). In a footnote, KSEA focuses on claim construction discovery, noting that Stryker's expert did not answer any questions related to the IPRs, implying that this creates prejudice. (Dkt. No. 181 at 14 n.8.) But this observation ignores a practical reality: while claim construction discovery has closed, Stryker has not explained how any of the proposed amendments impact claim construction, and fact and expert discovery are wide open with no deadline in sight, so KSEA will have the opportunity to question Stryker's experts about the IPR materials.

\* \* \*

In short, Stryker has met its burden of establishing its diligence in discovering the new prior art references, though not the additional disclosures and obviousness combinations from references it identified or disclosed in its initial contentions. Stryker has met its burden of establishing its diligence in moving to amend. With respect to all of the proposed amendments, even those that arguably were not diligently discovered, the Court finds that permitting the amendments will not prejudice KSEA. Accordingly, the Court in its discretion GRANTS Stryker's motion to amend its invalidity contentions.

**II.      Administrative Motion to File Under Seal**

There is a presumption of public access to judicial records and documents. N*ixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. [Federal Rule of Civil Procedure] 26(c) authorizes a district court to override this presumption where 'good cause' is shown." S*an Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1103 (9th

Cir.1999). Sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." N.D. Cal. Civ. L.R. 79-5(a). A party may meet this burden by showing that the information sought to be withheld creates a risk of significant competitive injury and particularized harm. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2006). A party may also meet this burden by establishing that information contains trade secrets that create a risk of significant competitive injury and particularized harm, *see Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161-62 (9th Cir. 2011) (citation omitted), or where disclosure of the information would violate a party's legitimate privacy interest that similarly leads to such risk, *see, e.g.*, *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-2581 JF (HRL), 2010 WL 3221859, at *5 (N.D. Cal. Aug. 13, 2010). Whatever the grounds, a party must "narrowly tailor" its request to sealable material only. *Id.*

Here, Stryker seeks to seal Exhibit 3 to the Declaration of Michael J. Carrozza and the portions of its motion for leave to amend invalidity contentions that reference Exhibit 3. KSEA designated Exhibit 3 "Highly Confidential – Attorneys' Eyes Only" pursuant to the parties' stipulated Protective Order. (Dkt. No. 115.) Pursuant to Civil Local Rule 79-5(e), as designee of the purportedly confidential information, KSEA has submitted the declaration of Robert D. Keeler in support of Stryker's administrative motion to file under seal. (Dkt. No. 173.) Mr. Keeler represents that Stryker's motion for leave to amend invalidity contentions may be made publicly available. (*Id.* ¶ 5.) In other words, KSEA concedes that there is no need to file the motion for leave to amend invalidity contentions under seal. Accordingly, the Court DENIES Stryker's administration motion to file its motion for leave to amend its invalidity contentions under seal. Stryker shall file its motion for leave to amend on the public docket by May 19, 2016.

As for Exhibit 3, Stryker filed the entire document under seal consistent with KSEA's designation. KSEA now contends that only portions of Exhibit 3 require redaction, as only those portions "contain confidential KSEA business information, including sales and pricing information, business development strategy, and product development strategy, which if publicly disclosed will put KSEA at a competitive business disadvantage." (Dkt. No. 173 ¶ 7.) The Court

has reviewed the proposed redactions and agrees that they disclose such confidential information. While some pages of the document are redacted in their entirety, the proposed redactions are narrowly tailored to seal only information that discloses this confidential information. The Court therefore GRANTS IN PART Stryker's administrative motion to file Exhibit 3 under seal. Stryker shall file Exhibit 3 with KSEA's proposed redactions on the public docket by May 19, 2016.

## CONCLUSION

For the reasons described above, the Court GRANTS Stryker's motion to amend invalidity contentions. The Court GRANTS IN PART the administrative motion to file under seal as set forth above, and ORDERS Stryker to file its motion for leave to amend invalidity contentions and the redacted version of Exhibit 3 to the Carrozza Declaration on the public docket by May 19, 2016.

This Order disposes of Docket Numbers 167 and 168.

**IT IS SO ORDERED.**

Dated: May 12, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge