United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL STORZ ENDOSCOPY-AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> STRYKER CORPORATION, et al., <br><br> Defendants. | Case No. 14-cv-00876-RS (JSC) <br><br> **ORDER RE DEFENDANTS' REQUEST FOR SANCTIONS AND TO STRIKE PLAINTIFF'S 5TH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4** <br><br> Re: Dkt. Nos. 279, 280, 284 |

The Court is in receipt of two joint discovery letter briefs.[1] (Dkt. Nos. 280, 284.[2]) Both pertain to the fifth supplemental response of Plaintiff Karl Storz Endoscopy-America ("KSEA") to Interrogatory No. 4 served by Defendants Stryker Corporation and Stryker Communications, Inc. (together, "Stryker"). In the first dispute, Stryker asks the Court to strike KSEA's fifth supplemental response and compel an answer based on the documents cited in its Patent Local Rule disclosures and prior interrogatory responses. (Dkt. No. 280.) In the second, Stryker requests that the Court sanction KESA for violating its April 17, 2017 Order by (i) mandating that a fact-finder infer a pre-critical date sale and (ii) order KSEA to pay Stryker $24,373.00 in attorney's fees and costs. (Dkt. No. 284.) Having considered the parties' submissions, and having had the benefit of oral argument on August 17, 2017, the Court grants in part and denies in part Stryker's requests as set forth below.

//

---

[1] This case has been referred to the undersigned magistrate judge for discovery purposes. (Dkt. No. 99.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers as the top of the page.

**BACKGROUND**

KSEA initiated this action more than three years ago, alleging that Stryker's medical imaging devices and operating room communication technology infringes KSEA's patents. There are four patents-in-suit.[3] (*See id*. ¶¶ 11-15; *see also* Dkt. No. 255 at 1 n.2.) On June 17, 2014, Stryker served Interrogatory No. 4 on KSEA. The interrogatory asked KSEA to identify, among other things, the date(s) when the claimed subject matter for each patent "was first offered for sale, and in public use, and the circumstances surrounding such sale, offer for sale and use." It also asked KSEA to identify each document identifying the factual bases for Plaintiff's answers. (Dkt. No. 255-1 at 9.)

KSEA's first two responses to Interrogatory No. 4 did not answer the offered for sale question, although the first supplemental response identified documents by bates number that it claimed "enable Stryker to derive or ascertain the requested information." (Dkt. No. 255-1 at 9-11.) In KSEA's second supplemental response, served in August 2016, KSEA again provided Bates-stamp ranges for documents that it contended would permit Stryker to ascertain the requested information, but did not otherwise provide any information as to the date of first sale. (*Id*. at 11-12.)

More than two months later, KSEA served a third supplemental objection and response to Interrogatory No. 4. There, it represented for the first time that the '420 patent was conceived "in or around late 2002 to early 2003." (*Id*. at 13.) KSEA also stated that it is not "aware of any public disclosures, sales, offers for sale, or public use of the claimed inventions of the '420 Patent before December 29, 2003," but did not otherwise describe the offer for sale or public use as required by Interrogatory No. 4. (Dkt. No. 255-1 at 13.) KSEA also identified the same Bates-stamp range of documents it contended would allow Stryker to "derive or ascertain the requested information" for the '420 Patent. (*See* Dkt. No. 255-1 at 13.)

Stryker subsequently requested that the Court, among other things, compel KSEA to

---

[3] Specifically, the patents alleged in the amended complaint include United States Patent Nos. 8,069,420 ("the '420 patent"), 7,461,310 ("the '310 patent"), 7,821,530 ("the '530 patent"), 7,844,657 ("the '657 patent"), and 8,439,821 ("the '821 patent"). (Dkt. No. 67 ¶¶ 11-15.) KSEA is no longer asserting the '657 patent. (See Dkt. No. 255 at 1 n.2.)

identify specific dates of first disclosure, first use, first sale, and first offer for sale. (Dkt Nos. 254, 255.) The Court ordered KSEA to supplement its response to Interrogatory No. 4 within 30 days of the date of the Order, that is by May 17, 2017. (Dkt. No. 258.)

On May 17, 2017, KSEA served its Fourth Supplemental Objections and Responses to Defendants' Interrogatory No. 4. (Dkt. No. 284-1 ¶ 2.) With respect to the first offer for sale or public use of the invention claimed by the '420 Patent KSEA responded: "The first sale of the claimed subject matter of the '420 Patent was installed in March 2005 and subsequently used after installation." KSEA then identified by Bates number the documents supporting that assertion. (Dkt. No. 284-2 at 6.)

Stryker complained to KSEA about its interrogatory response on May 31, 2017. KSEA responded the following day and still refused to provide a first date of first sale; instead, it claimed the graphical user interface disclosed in the documents it had cited in its interrogatory response were not offered for sale in October 2002. (Dkt. No. 284-8.)

Twenty days later Stryker sent a draft discovery letter to KSEA seeking sanctions against KSEA for failing to comply with the Court's April 17 Order requiring KSEA to provide a first date of sale for the claimed subject matter of the '420 patent. (Dkt. No. 288-7.) On June 23, 2017, KSEA replied that Stryker had failed to follow the proper procedures set by the Court for resolving discovery disputes, that Stryker should have asked KSEA to supplement its response or request a meet and confer, and if Stryker had followed these proper procedures it would have learned that its work on the discovery letter was unnecessary because "newly discovered information and documents are forthcoming." (Dkt. No. 288-8 at 2-3.)

On this same day, June 23, 2017, KSEA served its Fifth Supplemental Response to Interrogatory 4. (Dkt. No. 280-1 ¶ 2.) The response states the claimed subject matter of the '420 patent was conceived by Robert Plummer on September 18, 2002, the first installation date for testing at UCLA's Center was between February and June 2004, and the first offer for sale was in June 2004 to either Celebration or the Mayo Clinic. (Dkt. 280-2 at 10:10-24.) This was the first time KSEA had suggested this first date of sale and the first time it had mentioned Celebration or the Mayo Clinic in connection with the '420 patent.

3

Stryker now seeks to: (1) to strike KSEA's fifth supplemental response and compel an answer based on the documents cited in its Patent Local Rule disclosures and prior interrogatory responses; (2) sanction KESA for violating the Court's April 17 Order by mandating that a fact-finder infer a pre-critical date sale; and (3) order KSEA to pay Stryker $24,373.00 in attorney's fees. (Dkt. Nos. 280, 284.)

**DISCUSSION**

**I.    The Fifth Supplemental Response Will be Stricken**

KSEA's identification of a sale to Celebrity or Mayo in June 2004 as the first date of sale of the subject matter claimed by the '420 patent is too late. The "spirit of the patent local rules . . . is to ensure early crystallization of the parties' theories, and specifically, to place the burden on the plaintiff to quickly decide on and disclose the contours of its case." *OpenTV, Inc. v. Apple Inc.*, No. 15-cv- 02008-EJD (NC), 2016 WL 3196643, at *3 (N.D. Cal. June 9, 2016). To that end, Patent Local Rule 3-2(a) obligated KSEA to early on produce documents "sufficient to evidence . . . . each sale or offer to sell . . . of the claimed invention prior to the date of application for the patent in suit." Patent L.R. 3-2(a). The documents KSEA identified in its 3-2(a) response did not identify Celebration or the Mayo Clinic or the June 2004 date. Further, none of its first four responses to Interrogatory No. 4 seeking the date of first sale identified Celebration or the Mayo Clinic or the June 2004 date.

KSEA's belated change in theory prejudiced Stryker. While for years KSEA steadfastly refused to affirmatively answer a first date of sale in response to Interrogatory No. 4, it did identify documents that KSEA represented showed the first date of sale. And, its 3-2(a) response also identified documents it represented showed the first date of sale. Stryker relied on those documents to develop a theory and acquire evidence that the first date of sale was to UCLA in October 2002. Stryker will be prejudiced if it now has to investigate KSEA's brand new theory that the first date of sale was in June 2004 to Celebration or the Mayo Clinic.

Apart from the prejudice to Stryker, KSEA has not shown good cause for its belated disclosure. KSEA possessed all the documents on which its new theory relies and was obligated to investigate the first date of sale years ago. That the inventor's memory was only recently

4

jogged is no excuse. Whatever KSEA showed the inventor to jog his memory in June 2017 could have been shown to the inventor in 2014 when it was first served with Interrogatory No. 4, in December 2016 when it served its first supplemental response, in March 2017 when it served its third supplemental response, and in May 2017 when it served its court-ordered fourth supplemental response. KSEA simply did not conduct its required investigation in a timely manner. Accordingly, the Court strikes KSEA's fifth supplemental response to Interrogatory No. 4.

The Court declines Stryker's invitation to also sanction KSEA by ruling that the first date of sale was to UCLA in October 2002. Stryker is free to argue to the district court or the jury that the documents identified by KSEA as sufficient to show the first date of sale in its first four responses to Interrogatory No. 4 and its Local Rule 3-2(a) submission disclose the October 2002 sale to UCLA. KSEA may dispute that the documents it identified as showing the first date of sale establish that date, but as the Court has stricken its belated fifth supplemental response it may not contend that the first date of sale was in October 2004 to Celebrity or the Mayo Clinic. In other words, KSEA is held to its representations upon which Stryker relied. The Court believes this approach appropriately mitigates Stryker's prejudice.

## II. Attorneys' Fees

If a party fails to comply with a discovery order "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

KSEA violated the Court's April 17 Order. The Order required KSEA to, among other things, by May 17 identify (i) the dates when the claimed subject matter of the '420 patent was first sold and offered for sale, and (ii) the surrounding circumstances. KSEA's fourth supplemental interrogatory response was served on May 17, but provided no dates of first sale and offer for sale for the '420 patent, no facts about the surrounding circumstances, and no explanation as to why it withheld this information. KSEA also did not ask for any extension; instead, it simply ignored the Court's Order and conducted its investigation on its own time frame. KSEA thus

5

1 willfully violated the Court's Order.

2 KSEA's plea that fees are not warranted because Stryker did not meet and confer before preparing its motion for sanctions is unpersuasive. Stryker met and conferred with KSEA many times regarding its deficient response to Interrogatory No. 4, culminating in the April 17, 2017 Order. It was not required to meet and confer again as KSEA's response violated that portion of the Order regarding the on sale date and surrounding circumstances. KSEA seems to believe that it can comply with interrogatories and Court orders when it gets around to it. Not so.

As a result of KSEA's failure to comply with the April 17 Order, Stryker wrote KSEA on May 31, wrote a discovery letter on June 20, and then filed the motions to strike the fifth supplemental response and for sanctions. It seeks its fees incurred in bringing the motion for sanctions. The fees sought include time researching "commercial offers for sale, commercial sales, and "ready for patenting" standard. (Dkt. No. 284-1 at 3.) The Court will not award fees for time spent on this research as it goes to the merits of its invalidity defense rather than sanctions. Stryker chose to block bill its research time and thus the Court cannot discern how much of the nine hours of research was on these topics on how much on compensable legal research. Accordingly, the Court will deduct seven of the nine hours claimed. Stryker also chose not to identify the hourly rate charged for particular tasks; instead, it identified the range of rates. The Court will therefore apply the highest hourly rate to the seven hours and deduct a total of $4,550.00 from the $24,373.00 sought by Stryker for a total award of $19,823.00.

## CONCLUSION

KSEA's fifth supplemental response to Interrogatory No. 4 is stricken. While Stryker must prove its invalidity defense, KSEA is precluded from offering the evidence and theory identified for the first time in its fifth supplemental response. Further, as KSEA violated the Court's April 17, 2017 Order, thus necessitating Stryker's motion for sanctions, it must pay Stryker $19,823.00 in attorney fees within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 5, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge