UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL STORZ ENDOSCOPY-AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> STRYKER CORPORATION, et al., <br><br> Defendants. | Case No. 14-cv-00876-RS (JSC) <br><br> **ORDER RE PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' INVALIDITY CONTENTIONS** <br><br> Re: Dkt. Nos. 304, 303 |

Plaintiff Karl Storz Endoscopy-America (KSEA) moves to strike portions of the Stryker Defendants' Second Supplemental Invalidity Contentions ("Invalidity Contentions") for failure to comply with Patent Local Rule 3-3(a)-(d). (Dkt. No. 304.) KSEA also moves to strike Stryker's First Supplemental Response to Interrogatory No. 7 arguing the theories disclosed in the First Supplemental Response pertaining to the invalidity of the 420' and '821 patents under 35 U.S.C. § 101 was not disclosed in the Invalidity Contentions and therefore Stryker cannot rely on them. (*Id*. at 11:6-17.) Having carefully reviewed the parties' briefing, and having had the benefit of oral argument on October 27, 2017, the Court GRANTS KSEA's motion in part with leave to amend.

## PROCEDURAL BACKGROUND

Stryker served its original invalidity contentions on October 1, 2014. (Dkt. No. 304-1 ¶ 3.) It moved to amend the contentions for the first time on April 7, 2016. (Dkt. No. 168.) The amendment sought to "include a new prior art product manual that was produced to Stryker by a third party" and "to incorporate materials from Stryker's petitions for inter partes review (IPR)." (*Id*. at 4:14-20.) The Court granted Stryker's motion on May 12, 2016 (Dkt. No. 198), and around the same time granted a stipulation to add an additional reference to the contentions. (Dkt. No.

United States District Court
Northern District of California

189.) Stryker thereafter served its amended Contentions.

On September 27, 2016, upon stipulation, Stryker served its Second Supplemental Invalidity Contentions. The Contentions added information obtained from two third-party subpoenas. (Dkt. No. 231 at 2:17-21, Dkt. No. 232.) Stryker served its Second Amended Invalidity Contentions a few days thereafter. (Dkt. No. 304-3.)

Nearly nine months later, in a June 16, 2017 letter, KSEA for the first time identified deficiencies in Stryker's invalidity contentions relating to prior sales, public use, public knowledge, prior inventions, and § 101 arguments. (Dkt. No. 304-5 at 1-2.) Stryker replied five weeks later describing why it disagreed with KSEA's arguments. (Dkt. No. 304-7.) Stryker concluded its letter by stating: "Should you wish to discuss this further, we are generally available Wednesday, Thursday, and Friday, July 26, 27, and 28, respectively, for a teleconference." (*Id*. at 5.) There is nothing in the record to suggest that the parties did discuss the contentions further. Stryker served its first supplemental response to interrogatory number seven on August 18, 2017. (Dkt. No. 304-4 at 9.) KSEA filed the instant motion approximately three weeks later. (Dkt. No. 304.)

## LEGAL STANDARD

The Northern District has adopted local rules that "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro In'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed Cir. 2006). The rules provide "for a streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in [their] absence and are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-CV-01745-VC (KAW), 2015 WL 5440674, at *1 (N.D. Cal. Sept. 15, 2015) (citation and internal quotation marks omitted); *see also Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 15-CV-03853-EMC, 2016 WL 1461487, at *3 (N.D. Cal. Apr. 14, 2016) ("The main purpose of the discovery-related Patent Local Rules is to get the parties to commit to positions early on in the litigation and stick to them absent good cause.").

The patent local rules require "detailed disclosures of a party's invalidity contentions." *Life Techs. Corp. v. Biosearch Techs, Inc.*, No. C 12-00852 WHA, 2012 WL 4097740, at *1 (N.D. Cal. Sept. 17, 2012). Rule 3-3 states a party's invalidity contentions must contain:

a) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious....

b) Whether each item of prior art anticipates each asserted claim or renders it obvious. If obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness;

c) A chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

d) Any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claim.

These rules are "not a straitjacket into which litigants are locked from the moment their contentions are served"; instead, there is "a modest degree of flexibility, at least near the outset." *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2007 WL 1288199, at *1–2 (N.D. Cal. Apr. 30, 2007) (citation and internal quotation marks omitted); *see also Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *3 (N.D. Cal. Jan. 9, 2017) (explaining that the local rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case ... a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it") (citation and internal quotation marks omitted).

## INVALIDITY CONTENTIONS

Stryker's invalidity contentions are composed of five sections. In Section I, Stryker identifies approximately 500 prior art references consisting of patents, patent applications, and

3

printed publications that anticipate each claim or renders it obvious. (Dkt. No. 304-3 at 12-37.) Section II pertains to Local Rule 3-3(b). Stryker identifies each prior art that renders the '310, '530, '657, '420, and '821 patents invalid. (*Id*. at 11:25-12:6.) Stryker identifies the prior art that anticipates the claim or renders it obvious for each patent, for a total of approximately 60 of its 500 prior art references identified in Section I. (*Compare id*. at 12-37 (500 references) with *id*. at 54, 56-70, 140, 143-149, 232, 236-242, 412, 414-416, 441-442 (prior art references that anticipate the claim or render it obvious for each patent and claim).

Section III concerns Local Patent Rule 3-3(c). Stryker provides 32 claims charts, with each chart identifying one primary reference. (*Id*. at 441-442 and Dkt. Nos. 304-306 (Exhibits A1-E3)). Stryker contends that the charts cite "exemplary portions of the identified references" but that these references "may contain additional disclosures of the claim elements." (Dkt. No. 304-3 at 442:14-15.) Stryker reserves the right to "rely on other portions of the identified references to support its invalidity defenses." (*Id*. at 442:15-16.) Stryker further asserts that it may rely on "uncited portions of the prior art references, on other publications, and/or on expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine certain of the cited references so as to render the claims obvious." (*Id*. at 442:20-22.)

Section IV pertains to Local Patent Rule 3-3(d). For parts C-E related to the '657, '420, and '821 patents Stryker declares: "[a]ll asserted claims ...are invalid under 35 U.S.C. § 101 because they are not directed to patentable subject matter." In regards to Stryker's § 112(1) enablement and written description, and § 112(2) indefiniteness arguments for the '310 patent (section A) and the '821 patent (section E) Stryker writes in part:

- **'310 Patent, Claims 9-14**: "invalid as lacking written description ...because there is no support in the specifications for the term 'an imager, for generating the stream of digital video' as recited in the claims. At most, the specification of the '310 patent supports an imager producing only analog image data, not digital image data. See Office Action Dated April 6, 2004 (rejecting claims 34-40 on such a basis; Applicant acquiesced by amending claim 34 to include an analog-to-digital converter.)"

- **'310 Patent, Claims 11-12**: "...invalid as indefinite...at least because there is no antecedent bass for the term "the image signal"

- **'821 Patent, Claims 1-11**: "...invalid as lacking written description....because there is no support in the specification for the term 'control command'....invalid as indefinite...fails to provide one of ordinary skill in the art with a sufficiently clear indication of the scope or meaning of 'safety related functions'"

(*Id*. at 444-445.)

Section I(D) concerns Patent Local Rule 3-3(a). In subsection (b), Stryker identifies the public use and knowledge of an integrated operating room system called the "SAGES System" as prior art. (*Id*. at 42:12-14.) Subsections (c)-(i) discuss other systems which were used "prior to December 29, 2003" or "on or about January 2004." (*Id*. at 42:20-43:17.) Furthermore, under subsections (g) and (j) Stryker "reserves the right to assert that the UCLA system was publicly used" and that the "Lakeland System or the UCLA System were publicly disclosed." (*Id*. at 43:9, 18-19.)

Section I(E)(a-d) identifies four different systems as prior inventions under 35 U.S.C. § 102(g). (*Id*. at 43-44.) Subsections (a)-(b) specify the name of the system and the inventor, but do not provide any details about what the invention is, when it was conceived, or any other details regarding how it works. (*Id*. at 43:21-26.) Furthermore, subsections (c)-(d) do not identify who participated in the invention. (*Id*. at 44:1-7.)

## DISCUSSION

KSEA argues: (1) Stryker fails to identify whether prior art references render the asserted claims anticipated or obvious as required by Rule 3-3(b); (2) Stryker violated Rule 3-3(c) because Stryker's prior art references are not included in the claim charts and fail to specifically identify each claim limitation; (3) the § 101 contentions in Sections IV(D)-(E) merely recite legal conclusions; (4) Sections IV(A) and (E) concerning Stryker's enablement, written description, and indefiniteness arguments are conclusory in violation of Rule 3-3(d); (5) the § 102 contentions violate Rule 3-3(a) because Stryker fails to chart all references and provide dates of allegedly invalidating uses; and (6) the § 102 contentions also violate Rule 3-3(a) because they fail to include information regarding the making of the inventions that are allegedly invalidating and who was involved. KSEA insists the appropriate remedy for Stryker's violation of Rule 3-3 is to strike the contentions without leave to amend.

5

## I. Stryker's Invalidity Contentions

### 1. Rule 3-3(b)(c) Prior Art References

KSEA argues Stryker fails to identify whether most of its nearly 500 prior art references listed in Section I of its contentions render the asserted claims anticipated or obvious as required by Rules 3-3(b) and 3-3(c). As Stryker explained at oral argument, it does not disagree; instead, it intends Section I to identify prior art to show state of the art. Its obviousness and anticipation contentions are limited to the 60 or so prior art references identified in Section II and the Section III claim charts. While the contentions themselves do not make this limitation clear, and in fact suggest otherwise, it is clear now: Stryker's anticipation and obviousness contentions are limited to the prior art specifically identified in Section II and the Section III claim charts absent leave of court.

### 2. Stryker's § 101 Contentions and Interrogatory No. 7

KSEA argues Stryker's § 101 contentions in Sections IV(D)-(E) merely recite legal conclusions in violation of Local Patent Rule 3-3(d).

"The efficacy of the Patent Local Rule 3-3(d) —requiring invalidity contentions to identify "[a]ny grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims"—would be a nullity if parties could address it with a broad reservation." *Finjan*, 2015 WL 9460295, at *3. "Such a general disclaimer would be contrary to the local rules' requirement that parties crystallize their theories early in the litigation." *Id*.

Stryker's language under Section IV(D)-(E) consists of legal conclusions in violation of Local Rule 3-3(d). For the '657, '420, and '821 patents Stryker states: "[a]ll asserted claims . . . are invalid under 35 U.S.C. § 101 because they are not directed to patentable subject matter." This disclosure does nothing more than state that the patent is invalid under section 101; it does not give the grounds for that contention. Accordingly, it violates Rule 3-3(d) and must be stricken. *See Finjan*, 2015 WL 9460295, at *3.

Stryker insists that its § 101 contentions comply with the local rules. It contends that unlike theories based on §§ 102 and 103, where the local rules specify what detail is required, the

local rules do not specify what detail, if any, is required to give the "grounds" for a § 101 defense. However, Stryker fails to give any grounds for its § 101 defense; it merely states that '657, '420, and '821 patents claim unpatentable subject matter. Stryker must at least identify why '657, '420, and '821 patents are not a new or useful processes or improvement that are patentable. Stryker has failed to do so in its operative invalidity contentions.

While Stryker's invalidity contentions do not give the grounds for its section 101 contentions, its supplemental response to interrogatory seven does: (1) the asserted claims of the '420 patent are invalid under § 101 because "they merely claim the abstract idea of routing video from an output to an input"; and (2) the asserted claims of the '821 patent are invalid because they "merely claim the abstract idea of a topology for components in a system." (Dkt. No. 304-4 at 8:23-26.) KSEA argues that this supplemental response to interrogatory seven should be stricken because these theories are not disclosed in Stryker's Invalidity Contentions.

"Any invalidity theories not disclosed pursuant to Local Rule 3–3 are barred, accordingly, from presentation at trial (whether through expert opinion testimony or otherwise)." *Media Tek*, 2014 WL 690161, at *1. These two new invalidity theories violate Rule 3-3 which states a party's *invalidity contentions* must contain any grounds of invalidity based on 35 U.S.C. § 101. Patent L.R 3-3(d) (emphasis added). Because Stryker disclosed these new theories in its supplemental response to interrogatory seven, Stryker is barred from presenting these two theories at trial unless Stryker is given leave to amend its contentions. *See Media Tek*, 2014 WL 690161, at *1.

Stryker's argument that *MediaTek* is distinguishable because it involved striking new theories from expert reports, not invalidity contentions, is misplaced. Local Rule 3-3(d) specifically requires that all theories regarding § 101 be disclosed in the invalidity contentions – *MediaTek* simply states that those theories that are not disclosed are barred from trial, "whether through expert opinion testimony or *otherwise*." Stryker cannot rely on theories in an expert report, an interrogatory response, or otherwise not disclosed in its Invalidity Contentions.

Accordingly, Stryker's § 101 contentions in Sections IV(D)-(E) are stricken.

**4.     Rule 3-3(d) and Conclusory Statements**

KSEA also argues that Sections IV(A) and (E) concerning Stryker's enablement, written

7

description, and indefiniteness arguments pursuant to 35 U.S.C. § 112 are conclusory and therefore violate Rule 3-3(d). Stryker concedes that its defenses set forth in Section IV(A) no longer apply. As such Section IV(A) is stricken. The Court proceeds to evaluate the remaining section – IV(E).

The contentions of a party alleging invalidity under 35 U.S.C. § 112 shall disclose "[a]ny grounds of invalidity based on ... indefiniteness, enablement or written description." Patent L.R. 3–3(d). "While the requirements for asserting a written description theory are not as detailed as for a claim of obviousness, it still must meet the threshold of giving the other party sufficient notice for it to engage in meaningful discovery and preparation of its case." *MediaTek*, 2014 WL 690161, at *6 (citing *Medimmune, LLC v. PDL Biopharma, Inc.,* C 08–5590 JF (HRL), 2010 WL 760443 (N.D.Cal. Mar. 4, 2010)). "Failure to be specific as to the 'grounds of invalidity based on indefiniteness'... substantially undermine[s] the purpose of the Patent Rules." *BioCell Technology LLC v. Anthro-7*, 2013 WL 12131282, at *9 (N.D. Cal. Apr. 16, 2013.)

Stryker argues that its § 112 defenses in Section IV(E) should not be stricken because they identify: (1) the claim terms; (2) the statutory basis for each contention; and (3) an explanation why § 112 is violated. Stryker writes the '821 patent is invalid as lacking written description because "there is no support in the specification for the term "control command," and invalid as indefinite and for lack of enablement because "the specification of the '827 patent fails to provide one of ordinary skill ...with a sufficient clear indication of the scope or meaning of 'safety related functions'...and 'non-safety related functions." The Court agrees Stryker's description complies with Rule 3-3(d). KSEA's reliance on *BioCell* is unpersuasive because there the defendants conclusorily stated that 15 claims were indefinite because a person skilled in the art "'would not understand the bounds of the claims in which they appear when read in light of the specification.'" *BioCell Tech. LLC*, 2013 WL 12131282, at *9. In other words, it merely stated the legal standard for invalidity but did not give any grounds whatsoever. Not so here. Accordingly, KSEA's motion to strike Section (E) of Stryker's invalidity contentions is denied.

**5.     Rule 3-3(a) Reference Charts and Dates of Invalidating Uses**

KSEA moves to strike Section I(D)(b)-(j) arguing the § 102(b) contentions violate Rule 3-

3(a) because Stryker failed to chart all references and provide dates of allegedly invalidating uses. Stryker withdraws its invalidity contentions under subjections (h), (i), and (j). Accordingly, the Court strikes subjections (h), (i), and (j) and proceeds to review subsections (b)-(g).

Patent Local Rule 3-3(a) requires that prior art under § 102(b) "be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known."

KSEA argues the system identified under subsection (b) does not disclose what the system is, what patents it invalidates, and no chart is provided to identify where and how the system allegedly discloses each limitation of any of the patents. KSEA further argues that subsections (c)-(f) fail to identify a date when the alleged use first took place. The Court agrees in regards to subsections (b) and (c)-(e).

In subsection (b), Stryker identifies the public use and knowledge of an integrated operating room system called the "SAGES System" as prior art. (Dkt. No. 304-4 at 42:12-14.) Stryker does not describe what this system is or what patent it invalidates. (*Id.* at 42:12-20.) Subsections (c)-(e) discuss other systems, but do not identify a date when the alleged use first took place. Stryker instead states the systems were used "prior to December 29, 2003." (*Id.* at 42:20-43:4.) Subjection (f), however, identifies "on or about January 2004" as the approximate date when the alleged use first took place and is therefore sufficient under Rule 3-3(a). (*Id.* at 43:5-8.)

Under subsection (g) Stryker "reserves the right to assert that the UCLA system was publicly used." (*Id.* at 43:9.) Such a blanket, vague statement that Stryker "reserves the right" to assert the system was "publicly used" without identifying the date the use took place or the identity of the persons who created the invention is a clear violation of Rule 3-3(a).

Stryker argues subsection (b) should not be stricken because Stryker explained in a July 21 letter that the invalidity chart in Exhibit D4 applies to the SAGES system. (Dkt. No. 304-7 at 4.) However, Stryker never sought to amend its invalidity contentions to make the assertion that Exhibit D4 applies. *See Media Tek*, 2014 WL 690161, at *1 ("[a]ny invalidity theories not

9

disclosed pursuant to Local Rule 3–3 are barred, accordingly, from presentation at trial (whether through expert opinion testimony or otherwise)." Stryker's argument that KSEA's counsel was present at the deposition which led to Stryker's contentions and could have followed up with additional discovery is also unavailing. It is not KSEA's burden to conduct discovery to clarify Stryker's invalidity contentions; Stryker is required "to state early in the litigation and with specificity" its contentions with respect to "infringement and invalidity." *O2 Micro Int'l Ltd.*, 467 F.3d 1355 at 1359.

Stryker further argues that: (1) subsections (c)-(e) should not be stricken because they provide date ranges, (2) KSEA stipulated to the description under subsection (f) on September 15, 2016, (3) and KSEA cannot argue it did not have notice of its contentions regarding the UCLA system in subsection (g) because it has been the topic of numerous discovery disputes. Not so. Stryker's statement that the systems were used "prior to December 29, 2003" does not provide sufficient notice to KSEA about the relevant date ranges. Furthermore, Stryker fails to cite to the record or provide any evidence that KSEA stipulated to the language in subsection I(D)(f). Finally, discovery disputes do not absolve Stryker's obligation to comply with the Patent Local Rules. Stryker was required to provide information regarding the UCLA systems. "Reserving its right" to disclose is improper.

Accordingly, KSEA's motion to strike Section I(D)(b)-(g) is granted.

### 6. Rule 3-3(a) Inventions That are Invalidating

KSEA moves to strike Section I(E)(a)-(d) arguing Stryker's § 102(g) contentions violate Rule 3-3(a) because they fail to include: (1) information regarding the making of the inventions that are allegedly invalidating; and (2) who was involved. Stryker withdraws its contentions in subsections (a)-(c); therefore, the Court proceeds to review Section I(E)(d).

Patent Local Rule 3-3(a) requires that "prior art under § 102(g) be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s)." Subsection (d) does not identify who participated in the invention. Stryker's argument that KSEA stipulated to the description under subsection (f) on September 15, 2016 is unpersuasive for the reasons described above. Accordingly, the Court

1    grants KSEA's motion to strike Section I(E)(d).

## II. Leave to Amend

Stryker attached amended contentions to it opposition in the event the Court grants KSEA's motion. KSEA insists that Stryker should not be allowed to amend its contentions for a third time because Stryker has not met its burden to show good cause and diligence. While amendments to invalidity contentions are permitted upon a timely showing of good cause, s*ee* Patent L.R. 3–6, the Rule does not "stand for the proposition that a party requesting leave to amend in response to a motion to strike must make the same showing of 'good cause' that it would be required to make if formally moving to amend its contentions to add newly discovered information." *See Slot Speaker*, 2017 WL 235049, at *9.

KSEA also argues it will suffer undue prejudice if Stryker is granted leave to amend because: (1) it would have sought different claim terms for construction had it been aware of Stryker's theories; and (2) it would have pursued different discovery and requested different email search terms. Stryker responds it should be permitted to amend because KSEA did not move to strike any portion of its invalidity Contentions until September 8, 2017. The Court agrees.

"In this district, motions to strike initial infringement contents are frequently treated as motions to compel amendment of the infringement contentions." *See Geovector Corporation v. Samsung Electronics Co. Ltd.*, 16-cv-02463-WHO, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017). Here, the contentions KSEA seeks to strike were in Stryker's original contentions served more than three years ago. KSEA waited nearly three years after receiving them, until the eve of the close of discovery, to raise the deficiencies with Stryker even though many of the inadequacies "appear[] curable with amendment." *See Comcast Cable Communications, LLC v. Open TV, Inc.*, C 16-06180, 2017 WL 2360088, *6 (N.D. Cal. June 19, 2017). Accordingly, the Court grants KSEA's motion to strike with limited leave to amend. On or before November 14, 2017, Stryker shall serve KSEA with its amended invalidity contentions as attached as Exhibit A to its opposition,

KSEA seeks attorneys' fees in the event the Court grants Stryker leave to amend. Stryker is in part responsible for KSEA having to file the motion to strike because Stryker rejected

11

KSEA's argument that it contentions were insufficient. However, in the same email doing so, Stryker also offered to meet and confer in a more meaningful way, and the record does not reflect that KSEA availed itself of that opportunity. Accordingly, KSEA's request for attorneys' fees is denied.

### III. Motion to Seal

KSEA moves to file under seal Exhibit D7 to the declaration of Michael K. Kosma. (Dkt. No. 303.) Exhibit D7 includes technical information about KSEA's products. (Dkt. No. 303-2.) The document submitted by KSEA clearly concerns confidential business information whose disclosure would impact KSEA's competitive posture. Accordingly, the Court GRANTS KSEA's motion to seal.

### CONCLUSION

For the reasons discussed above, the Court GRANTS in part and DENIES in part KSEA's motion to strike Stryker's invalidity contentions. The Court GRANTS KSEA's motion to seal Exhibit D7. Stryker must file its amended contentions by November 14, 2017.

This order disposes of Docket Nos. 303 and 304.

**IT IS SO ORDERED.**

Dated: November 13, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge