UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| KARL STORZ ENDOSCOPY-AMERICA, INC., | Case No. 14-cv-00876-RS  (JSC) |
|---|---|
| Plaintiff, | **ORDER RE: PLAINTIFF'S MOTION TO STRIKE; ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL** |
| v. | |
| STRYKER CORPORATION, et al., | Re: Dkt. Nos. 379, 380, 393, 397 |
| Defendants. | |

Plaintiff Karl Storz Endoscopy-America ("KSEA") alleges Defendants Stryker Corporation and Stryker Communications, Inc. (together, "Stryker") infringes three KSEA patents.  Now pending before the Court are KSEA's motion to strike portions of Stryker's expert reports  (Dkt. Nos. 379-4 & 380 (redacted version)); KSEA's administrative motions to file under seal (Dkt. Nos. 379 & 397); and Stryker's administrative motion to file under seal (Dkt. No. 393).[1] Having carefully reviewed the parties' briefing and voluminous exhibits, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the August 2, 2018 hearing, and GRANTS in part KSEA's motion to strike; GRANTS in part KSEA's motions to file under seal; and GRANTS Stryker's administrative motion to file under seal.

### BACKGROUND

The Court has previously addressed the factual and procedural background of this case. (*See* Dkt. Nos. 198 at 2-3, 329 at 1-2.) As relevant to the instant motions, Stryker recently served expert reports from the following:  Jordan C. Christoff (Dkt. No. 380-3); Harold J. Walbrink (Dkt. No. 380-4); Vincent A. Thomas (Dkt. No. 392-6); and Robert Greene Sterne (Dkt. No. 392-8).

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   These expert reports are the subject of KSEA's pending motion to strike.

2                              **LEGAL STANDARD**

3          Patent Local Rule 3–3(a) requires a defendant to serve invalidity contentions identifying

4   "each item of prior art that allegedly anticipates each asserted claim or renders it obvious."  "If

5   obviousness is alleged, [defendant must provide] an explanation of why the prior art renders the

6   asserted claim obvious, including an identification of any combinations of prior art showing

7   obviousness."  Patent L.R. 3-3(b).  The invalidity contentions must further contain "[a] chart

8   identifying where specifically in each alleged item of prior art each limitation of each asserted

9   claim is found."  Patent L.R. 3-3(c).[2]

10         The disclosure requirements under the Patent Local Rules "are designed to require parties

11  to crystallize their theories of the case early in the litigation and to adhere to those theories once

12  they have been disclosed." *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, No. C

13  03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006) (internal quotation marks and

14  citation omitted).  "[I]nvalidity theories not disclosed pursuant to Local Rule 3–3 are barred,

15  accordingly, from presentation at trial (whether through expert opinion testimony or otherwise)."

16  *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-53411-YGR, 2014 WL 690161, at *1

17  (N.D. Cal. Feb. 21, 2014).  Furthermore, "a party may not use an expert report to introduce . . .

18  new invalidity theories, or new prior art references not disclosed in the parties' infringement

19  contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-

20  CV-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).  "The threshold

21  question in deciding whether to strike an expert report is . . . whether the expert has permissibly

22  specified the application of a disclosed theory or impermissibly substituted a new theory

23  altogether." *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW, 2014 WL

24  1653131, at *2 (N.D. Cal. Apr. 24, 2014).

25

26

27  _____
    [2] Stryker served its Fourth Supplemental Invalidity Contentions on November 11, 2017, (*see* Dkt.
28  No. 380-9); all references herein to Stryker's invalidity contentions and claims charts are to that
    document.

**DISCUSSION**

### I.    KSEA's Motion to Strike

KSEA requests that the Court strike the following from Stryker's expert reports: (1) new invalidity theories in Mr. Christoff's Invalidity Report; (2) new obviousness and backup theories in Mr. Walbrink's Invalidity Report; (3) uncrystallized theories in Mr. Christoff and Mr. Walbrink's Invalidity Reports; (4) reliance on undisclosed fact witnesses in Mr. Christoff's Invalidity Report and Mr. Thomas' Rebuttal; and (5) the Sterne Report in its entirety.

#### 1.    Previously Undisclosed Theories in Mr. Christoff's Invalidity Report

KSEA argues that Mr. Christoff's Invalidity Report contains previously undisclosed invalidity theories; specifically, KSEA takes issue with: (1) obviousness theories in Section VIII.E; (2) obviousness theories regarding claim 6 of the '310 patent in Sections VIII.E.15, 19, and 23; and (3) references to Endovision XL in Section VIII.C.  The Court addresses each in turn.

##### i.    Section VIII.E

KSEA insists that seven of Mr. Christoff's invalidity theories for the '310 patent in Section VIII.E must be stricken because Mr. Christoff "flips Stryker's previously-disclosed combinations—using Stryker's secondary references as primary and Stryker's primary references as secondary." (Dkt. No. 379-4 at 6.)  KSEA argues that such "flipping" creates entirely new invalidity theories.  Stryker counters that its "invalidity contentions disclosed all of the combinations of references about which Mr. Christoff opines," and there is "no support in the law" for "KSEA's novel 'flipping' theory." (Dkt. No. 394 at 7.)  The question then is whether Mr. Christoff's purported "flipping" of the combined references results in an entirely new theory because it changes *why* that particular combination renders the asserted claim obvious, or whether Mr. Christoff instead "permissibly specified the application of a disclosed theory," *see Adobe Sys. Inc.*, 2014 WL 1653131, at *2.  KSEA provides no case law to support its "flipping" argument, and the Court is unable to find on point authority addressing the issue of reference "flipping."  The Court, however, has "wide discretion in enforcing the Patent Local Rules," *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808, 2015 WL 9460295, *1 (N.D. Cal. Dec. 23, 2015) (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)), and finds that the

record demonstrates Stryker's compliance with those rules.

Stryker's invalidity contentions include a list of specific combinations of references that allegedly render obvious the asserted claims of the '310 patent. (Dkt. No. 380-9 at 58-71.) That list includes the specific combinations referenced in Mr. Christoff's report challenged by the instant motion. Stryker's invalidity contentions further note that "[t]he prior art identified herein and in the attached charts[3] can properly be combined in multiple ways to demonstrate the obviousness of the asserted claims." (*Id*. at 72.) With this in mind, the Court addresses each of Mr. Christoff's contested theories.

### a. Eto 581 and Okada 852

Stryker's invalidity contentions state, in pertinent part:

> Certain claims of the '310 . . . patent[ ] would have been obvious to one of ordinary skill in the art at the time of the alleged invention of the '310 . . . patent[ ] based on Eto 581 in combination with or in view of one or more of the following references (collectively, the "Processor and Memory References"):
>
> - Dowdy 082
> - Okada 852
> - Oshima 212
> - Zu 391

(Dkt. No. 380-9 at 95.) Furthermore, the invalidity contentions state that:

> Eto 581 discloses a video imaging system that comprises a camera control unit, a cable, and a camera head. Eto 581 also discloses a camera head including an imager, a timing generator, a converter, a serializer, a digital serial driver, a digital serial receiver, a multiplexer, and a processor. Eto 581 also discloses a camera control unit including a digital serial receiver and a digital serial driver that is controlled based at least in part upon the timing signal.

(*Id*.) As for Okada 852, the invalidity contentions state that:

> Okada 852 also discloses a video imaging system for an endoscope including a camera head and a camera control unit. The camera head of Okada 852 includes a processor and memory containing information about the camera head. The memory of Okada 852 is accessible to the processor.

---

[3] Stryker's claim charts for the '310 patent include a preface stating that "Stryker presents the state of the art at the time of the alleged invention of the '310 patent in Section II.B.1, its general obviousness contentions in Section II.B.3, and a technology background in Section II.A, of Stryker's Invalidity Contentions." (Dkt. No. 394-2 at 2.)

4

(*Id*. at 96.)  The invalidity contentions then explain why the combination of Eto 581 and the Processor and Memory References, which include Okada 852, renders obvious claim 1 of the '310 patent.  (*Id*. at 96-98.)

KSEA insists that Mr. Christoff's theory of obviousness based on the combination of Eto 581 and Okada 852 is "entirely new" because it relies on Okada 852 instead of Eto 581 as teaching the following claimed features of the '310 patent: (i) "processing a continuous stream of digital video data"; (ii) "connected to said cable, for providing the stream of digital video data, said camera head including"; (iii) "an imager, for generating an analog stream of video data"; (iv) "a timing generator, generating a timing signal particular to said camera head, the timing signal actuating said imager and sent to said camera control unit"; (v) "a converter, for converting the analog stream of video data into the stream of digital video data"; (vi) "a serializer, for serializing the stream of digital video data for transmission over said cable"; (vii) "at least one digital serial driver"; (viii) "said camera control unit having at least one digital serial receiver"; and (ix) "is controlled based at least in part upon said timing signal particular to said camera head."  (Dkt. No. 379-4 at 7-8.)

As Stryker correctly points out, however, the invalidity contentions and the claims chart address limitations (i)-(v) and (ix) as also being taught by Okada 852.  (*See* Dkt. No. 394 at 12-13.)  Furthermore, Stryker correctly notes that Mr. Christoff's opinion does not rely only on Okada 852 as teaching limitations (vi)-(viii), but instead relies on Eto 581 or both Eto 581 and Okada 852.  (*See* Dkt. No. 394 at 12 n.4) (citing Dkt. No. 380-3 at ¶ 122.)  Thus, Mr. Christoff's Invalidity Report does not present an entirely new theory, but instead, specifies a previously disclosed theory of obviousness based on the combination of Eto 581 and Okada 852.

Accordingly, the Court denies KSEA's motion to strike Sections VIII.E.1-4 of Mr. Christoff's Invalidity Report.

### b.    Eto 581 and Dowdy 082

The invalidity contentions state, in pertinent part:

> Dowdy 082 discloses a video imaging system for an endoscope
> including a camera head, a cable, and a camera control unit. The
> camera head of Dowdy 082 includes a processor and memory

containing information about the camera head.

(Dkt. No. 380-9 at 95.) The invalidity contentions then explain why the combination of Eto 581 and the Processor and Memory References, which include Dowdy 082, renders obvious the asserted claims. (*Id.* at 96-98.) KSEA argues that Mr. Christoff's theory of obviousness based on the combination of Eto 581 and Dowdy 082 is "entirely new" because it relies on Dowdy 082 instead of Eto 581 as teaching the following claimed features of the '310 patent: (i) a camera control unit "processing a continuous stream of digital video data"; (ii) "for providing the stream of digital video data, said camera head including"; (iii) "an imager"; and (iv) "for generating an analog [sic] stream of video data".[4] (Dkt. No. 379-4 at 8.)

Again, however, Stryker correctly notes that its invalidity contentions and claims chart disclose limitations (i)-(iii) as also being taught by Dowdy 082. (Dkt. No. 394 at 13.) Thus, Mr. Christoff's report is not setting forth a new theory based on those limitations. Furthermore, Mr. Christoff's Invalidity Report does not rely only on Dowdy 082 as teaching limitation (iv), but instead relies on a combination of Eto 581 and Dowdy 082 for that element. (*See* Dkt. No. 380-3 at ¶ 178) ("The camera head would include an imager (e.g., Dowdy) and an ADC [analog to digital converter] (e.g., Eto) for generating a stream of digital video data.") Because Mr. Christoff's Invalidity Report specifies a previously disclosed obviousness theory based on a combination of Eto 581 and Dowdy 082, the Court denies KSEA's motion to strike Sections VIII.E.5-6 of Mr. Christoff's report.

### c. Eto 581 and Oshima 212

Stryker's invalidity contentions state, in pertinent part:

> Oshima 212 also discloses a video imaging system for an endoscope including a camera head, a cable, and a camera control unit. The camera head of Oshima 212 includes a processor and memory containing information about the camera head. The memory of Oshima 212 is accessible to the processor.

---

[4] KSEA's purported limitation (iv) misstates claim 21 of the '310 patent; the limitation should read "the stream of digital video data" instead of "an analog stream of video data." (*See* Dkt. No. 379-4 at 8.) Claim 21 of the '310 patent states, in pertinent part: "for providing the stream of digital video data, said camera head including; an imager, including an analog to digital converter for generating the stream of *digital* video data . . . ." (Dkt. No. 1-2 at 14-15) (emphasis added.)

(Dkt. No. 380-9 at 96.)  The invalidity contentions then explain why the combination of Eto 581 and the Processor and Memory References, which include Oshima 212, renders obvious the asserted '310 patent claims.  (*Id*. at 96-98.)  KSEA argues that Mr. Christoff's theory of obviousness based on the combination of Eto 581 and Oshima 212 is "entirely new" because it relies on Oshima 212 instead of Eto 581 as teaching the following claimed features of the '310 patent: (i) "processing a continuous stream of digital video data"; (ii) "for providing the stream of digital video data, said camera head including"; (iii) "an imager"; and (iv) "for generating an analog [sic] stream of video data."[5]  (Dkt. No. 379-4 at 9.)

KSEA's argument fails for the same reasons stated above.  Stryker's invalidity contentions and claims chart disclose limitations (i)-(iii) as also being taught by Oshima 212.  (Dkt. No. 394 at 13-14.)  Furthermore, Mr. Christoff's Invalidity Report does not rely only on Oshima 212 as teaching limitation (iv), but instead relies on a combination of Eto 581 and Oshima 212 for that element.  (*See* Dkt. No. 380-3 at ¶ 204) ("The camera head would include an imager (e.g., Oshima) and an ADC [analog to digital converter] (e.g., Eto) for generating a stream of digital video data.")  Accordingly, the Court denies KSEA's motion to strike Sections VIII.E.7-8 of Mr. Christoff's Invalidity Report.

### d.    Nakamura 492 and Okada 852

Stryker's invalidity contentions state, in pertinent part:

> Certain claims of the '310 . . . patent[ ] would have been obvious to one of ordinary skill in the art at the time of the alleged invention of the '310 . . . patent[ ] based on Nakamura 492 in combination with or in view of one or more of the following references (collectively, the "Processor and Memory References"):
>
> - Dowdy 082
> - Okada 852
> - Oshima 212
> - Zu 391

(Dkt. No. 380-9 at 105.)  Furthermore:

> Nakamura 492 discloses a video imaging system that comprises a camera control unit, a cable, and a camera head. Nakamura 492 also

---

[5] KSEA again misstates Claim 21 of the '310 patent.

discloses a camera head including an imager, a timing generator, a converter, a serializer, a digital serial driver, a multiplexer, and a processor. Nakamura 492 also discloses a camera control unit including a digital serial receiver that is controlled based at least in part upon the timing signal.

(*Id.* at 106.) As for Okada 852, the invalidity contentions contain the same description noted above. The invalidity contentions then explain why the combination of Nakamura 492 and the Processor and Memory References, which include Okada 852, renders obvious claim 1 of the '310 patent. (*Id.* at 106-08.)

KSEA argues that Mr. Christoff's theory of obviousness based on the combination of Nakamura 492 and Okada 852 is "entirely new" because it relies on Okada 852 instead of Nakamura 492 as teaching the following claimed features of the '310 patent: (i) "processing a continuous stream of digital video data"; (ii) "connected to said cable, for providing the stream of digital video data, said camera head including"; (iii) "an imager, for generating an analog stream of video data"; (iv) "a timing generator, generating a timing signal particular to said camera head, the timing signal actuating said imager and sent to said camera control unit"; (v) "a converter, for converting the analog stream of video data into the stream of digital video data"; and (vi) "is controlled based at least in part upon said timing signal particular to said camera head." (Dkt. No. 379-4 at 10.)

KSEA's argument fails for the same reasons its argument for striking Sections VIII.E.1-4 fails—Stryker's invalidity contentions and claims chart address limitations (i)-(vi) as also being taught by Okada 852. (*See* Dkt. No. 394 at 14.) Accordingly, the Court denies KSEA's motion to strike Sections VIII.E.15-18 of Mr. Christoff's Invalidity Report.

### e. Nakamura 492 and Dowdy 082

Stryker's invalidity contentions repeat the same description of Dowdy 082 noted above. The invalidity contentions then explain why the combination of Nakamura 492 and the Processor and Memory References, which include Dowdy 082, renders obvious claim 1 of the '310 patent. (*Id.* at 106-11.) KSEA insists that Mr. Christoff's theory of obviousness based on the combination of Nakamura 492 and Dowdy 082 is "entirely new" because it relies on Dowdy 082 instead of Nakamura 492 as teaching the following claimed features of the '310 patent: (i) "processing a

continuous stream of digital video data"; (ii) "a cable, connected to said camera control unit"; (iii) "an imager, for generating an analog stream of video data"; and (iv) "is controlled based at least in part upon said timing signal particular to said camera head." (Dkt. No. 379-4 at 11.)

Again, KSEA's argument fails. Stryker correctly points out that its invalidity contentions and claims chart address limitations (i)-(iii) as also being taught by Dowdy 082. (*See* Dkt. No. 394 at 15.) Furthermore, Stryker correctly notes that Mr. Christoff's Invalidity Report does not cite Dowdy 082 for limitation (iv); instead, Mr. Christoff relies on Nakamura 492 for that element. (*See* Dkt. No. 394 at 15 n.7) (citing Dkt. No. 380-3 at 208.) Accordingly, the Court denies KSEA's motion to strike Sections VIII.E.19-22 of Mr. Christoff's Invalidity Report.

### f. Nakamura 492 and Oshima 212

Stryker's invalidity contentions repeat the same description of Oshima 212 noted above. The invalidity contentions then explain why the combination of Nakamura 492 and the Processor and Memory References, which include Oshima 212, renders obvious claim 1 of the '310 patent. (*Id*. at 106-11.) KSEA argues that Mr. Christoff's theory of obviousness based on the combination of Nakamura 492 and Oshima 212 is "entirely new" because it relies on Oshima 212 (or Oshima or Nakamura) instead of Nakamura 492 as teaching the following claimed features of the '310 patent: (i) "a cable, connected to said camera control unit"; (ii) "for providing the stream of digital video data, said camera head including"; (iii) "an imager, for generating an analog stream of video data"; (iv) "a timing generator, generating a timing signal particular to said camera head, the timing signal actuating said imager and sent to said camera control unit"; and (v) "is controlled based at least in part upon said timing signal particular to said camera head." (Dkt. 379-4 at 12.)

KSEA's argument fails. Stryker's invalidity contentions and claims chart address limitations (i)-(iv) as also being taught by Oshima 212. (*See* Dkt. No. 394 at 15-16.) Once again, Stryker also correctly notes that Mr. Christoff's Invalidity Report does not cite Oshima 212 for limitation (v); instead, Mr. Christoff relies on Nakamura 492. (*See* Dkt. No. 394 at 15 n.8) (citing Dkt. No. 380-3 at 208.) Accordingly, the Court denies KSEA's motion to strike Sections VIII.E.23-26 of Mr. Christoff's Invalidity Report.

### g. Endsley 613 and Dowdy 082

Stryker's invalidity contentions state, in pertinent part:

> To the extent they are not anticipated by or obvious in view of Endsley 613 alone, certain claims of the '310 . . . patent[ ] would have been obvious to one of ordinary skill in the art at the time of the alleged invention of the '310 . . . patent[ ] based on Endsley 613 in combination with or in view of one or more of the following references (collectively, the "Processor and Memory References"):
>
> • Dowdy 082
> • Okada 852
> • Oshima 212
> • Zu 391

(Dkt. No. 380-9 at 77.) Furthermore:

> Endsley 613 discloses a video imaging system that comprises a camera, a cable, and a camera control unit. Endsley 613 also discloses a camera head with an imager that generates analog data, a timing generator that actuates the imager, a timing signal sent to the camera control unit, an analog-to-digital converter, a serializer, a digital serial driver, a digital serial receiver, a multiplexer, a processor, and a memory device accessible by the processor and containing camera head information. Endsley 613 also discloses a camera control unit with a digital serial receiver, a digital serial driver and that is controlled in party by the timing signal. Endsley 613 also discloses a plurality of interchangeable camera heads.

(*Id*. at 77-78.) As for Dowdy 082, the invalidity contentions repeat the same description noted above. The invalidity contentions then explain why the combination of Endsley 613 and the Processor and Memory References, which include Dowdy 082, render claim 1 of the '310 patent obvious. (*Id*. at 78-80.) KSEA argues that Mr. Christoff's theory of obviousness based on the combination of Endsley 613 and Dowdy 082 is "entirely new" because it relies on Dowdy 082 (or Dowdy and Endsley) instead of Endsley 613 as teaching the following claimed features of the '310 patent: (i) "processing a continuous stream of digital video data"; (ii) "an imager, for generating an analog steam of video data"; (iii) "at least one digital serial driver"; (iv) "said camera control unit having at least one digital serial receiver." (Dkt. No. 379-4 at 13.)

It follows from the above discussion that, again, KSEA's argument fails. Stryker's invalidity contentions and claims chart address limitations (i)-(iv) as also being taught by Dowdy 082. (*See* Dkt. No. 394 at 16.) Accordingly, the Court denies KSEA's motion to strike Section VIII.E.35 of Mr. Christoff's Invalidity Report.

10

### ii. Sections VIII.E 15, 19, and 23

KSEA argues that three footnotes contained in Sections VIII.E.15, 19, and 23 must be stricken because they constitute "new and previously-undisclosed" obviousness theories regarding claim 6 of the '310 patent. (Dkt. No. 379-4 at 14.) The Court agrees.

The footnotes state that the combinations of Nakamura and Okada, Nakamura and Dowdy, and Nakamura and Oshima "also render[ ] obvious claim 6 of the '310 patent." (Dkt. No. 380-3 at 115 n.11, 134 n.12, 147 n.13.) The invalidity contentions assert, however, that only claims 1, 2, 9-12, 15, 16, 21 and 22 are obvious based on those combinations. (Dkt. No. 380-9 at 61.) Thus, the footnotes are impermissible because they do not reflect "the application of a disclosed theory," but are instead "a new theory altogether." *See Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-0630-LHK, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) (noting that "[e]xpert reports may not introduce theories not set forth in contentions.").

Stryker argues that the footnotes should not be stricken because they are merely "observations" and do not constitute "anything substantive [in] Mr. Christoff's report." (Dkt. No. 394 at 19.) Stryker cites no authority for its contention, and its argument betrays its position. Accordingly, the Court grants KSEA's motion to strike footnotes 11, 12, and 13 from Mr. Christoff's Invalidity Report.

### iii. Reliance on Endovision XL in Section VIII.C

KSEA argues that Stryker is "precluded from relying on Endovision XL in Section VIII.C," and therefore, three citations in Mr. Christoff's report that reference Endovision XL should be stricken. (Dkt. No. 379-4 at 14.) The Court agrees.

As noted in the Court's December 21, 2017 Order, (Dkt. No. 348 at 1), Stryker withdrew its request to amend its invalidity contentions to include the Endovision XL endoscopic video camera as a basis for obviousness. Stryker acknowledges that "the three citations [referencing Endovision XL] that KSEA identified appear to have been inadvertently left in Mr. Christoff's report" following the Court's Order. (Dkt. No. 394 at 19.) Accordingly, the Court grants KSEA's motion to strike Mr. Christoff's citations that reference Endovision XL; specifically: (1) the Kennedy Dep. Tr. at 32:15-33:5, 61:15-62:21; and (2) HIT185-187. (*See* Dkt. No. 380-3 at ¶¶ 35

n.1, 62.)

### 2. Previously Undisclosed Theories in Mr. Walbrink's Invalidity Report

At the outset, Stryker acknowledges that the following combinations "were inadvertently omitted from its contentions and thus withdraws Mr. Walbrink's reliance on them": "(1) Wang 541, the Touch Panel references, and POSITA as applied to claim 7 of the 821 patent," (*see* Dkt. No. 380-4 at 196 Table 4, n.11); and "(2) GlobalControl and Howell as applied to the 420 patent" in Section 6.4.6.4. (Dkt. No. 394 at 19 n.9.) Stryker also withdraws Mr. Walbrink's position regarding his "obviousness theory of Hermes alone or with the knowledge of POSITA" in Section 6.5.4. (*Id.* at 20 n.10.) Therefore, the Court grants KSEA's motion to strike those theories from Mr. Walbrink's Invalidity Report.

### i. Combination of Wang 541 and Knowledge of POSITA applied to '821

KSEA argues that it is prejudiced because "Mr. Walbrink's Invalidity Report contains a new theory that Wang 541 renders the '821 patent obvious in combination with the knowledge of a person having ordinary skill in the art ('POSITA')." (Dkt. No. 379-4 at 15.) Stryker counters that "although the combination of Wang 541 and the knowledge of a POSITA may not be listed [in the invalidity contentions], the combination is listed in Stryker's claim chart E3." (Dkt. No. 394 at 20.) Stryker further argues that KSEA "suffered no real prejudice" because "KSEA's expert, Mr. D'Amelio, spent nearly 11 pages in his report attempting to rebut this combination." (*Id.*) (citing *Nortek Air Solutions, LLC v. Energy Lab Corp.*, No. 14-cv-02919-BLF, 2016 WL 3856250, at \*2 (N.D. Cal. July 15, 2016) (finding that plaintiff suffered no prejudice where its "expert was able to offer a rebuttal to each obviousness combination that [defendant] disclosed.").

The Court agrees with Stryker. The '821 claim chart states, in pertinent part:

> Even if Wang 541 does not expressly or inherently disclose this claim element, the claim would have been an obvious design choice based on the inherent disclosure of the references and/or the knowledge of one of ordinary skill in the art at the time of the alleged invention of the '821 Patent.

(Dkt. No. 394-7 at 12.) This information provided KSEA with sufficient notice of the theory of obviousness based on the combination of Wang 541 and the knowledge of a POSITA. *See Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 WL 620156, at \*6 (N.D. Cal. Jan. 30,

2018) (finding no prejudice where claims chart "disclosed enough information to put [plaintiff] on notice" of challenged theory).  Furthermore, KSEA fails to demonstrate how Mr. Walbrink's reliance on the combination of Wang 541 and the knowledge of a POSITA is prejudicial, given that KSEA's expert provided a lengthy rebuttal to that exact combination.  (*See* Dkt. No. 394-8 at 5-17.)

Accordingly, the Court denies KSEA's motion to strike Section 6.5.5.1 of Mr. Walbrink's Invalidity Report.

### ii.    Backup Obviousness Theories

KSEA argues that Mr. Walbrink's Invalidity Report contains a "barebones" backup obviousness theory regarding claim 3 of the '420 patent that provides no analysis to support its conclusion.  Specifically, KSEA seeks to strike the following italicized language in Section 6.4.5 of Mr. Walbrink's report:

> In my opinion, Claim 3 is anticipated by Alpha O.R. and OR1. The portions of these cited references teaching the claimed elements are found in the summaries of Section 6.4.4 and in the tables for each claim in Section 6.4.8. *If Claim 3 is not anticipated [by Alpha O.R. and OR1], it is obvious either alone, based on the reference and the knowledge of one of ordinary skill in the art including as described in the Technology Background section and section 6.4.4, or based on the combinations of references described in Section 6.4.6.*

(Dkt. No. 380-4 at 43) (emphasis added.)  KSEA insists that "Mr. Walbrink's Invalidity Report contains no obviousness analysis" for Alpha O.R. and OR1.  (Dkt. No. 379-4 at 16.)  Furthermore, KSEA cites Table 2 under Section 6.4.6 of Mr. Walbrink's report, which contains "[r]eferences rendering obvious '420 patent claims," but does not include Alpha O.R. and OR1.[6]  (*Id.* at 17) (citing Dkt. No. 380-4 at 44.)

Stryker counters that Table 2 applies only to "combinations of references," and "does not

---

[6] KSEA also cites deposition testimony of Mr. Walbrink wherein he was asked whether Table 2 reflects "all the combinations" that he plans to "opine on at trial regarding obviousness for the '420 patent."  (Dkt. No. 379-4 at 16 n.7)  Mr. Walbrink replied that "Table 2 represents the combinations at the time of [his] report."  (*Id.*)  Stryker argues that the "testimony is red herring" because it concerns combinations of references, not single references like Alpha O.R. and OR1. (Dkt. No. 394 at 22.)  The Court agrees that the deposition testimony has no bearing on the adequacy of the challenged language as it pertains Mr. Walbrink's obviousness theories based on Alpha O.R. and OR1 alone.

apply to obviousness positions based on the references alone." (Dkt. No. 394 at 22.) Although it is a close call, Stryker is correct. Table 2 contains the following single references: (i) SP3; (ii) GlobalControl; and (iii) Salandro 548. (Dkt. No. 380-4 at 44.) Mr. Walbrink does not assert, however, that those references "alone" render obvious claim 3 of the '420 patent. (*Id.* at 43.) Instead, Section 6.4.6 states that claim 3 is rendered obvious "based on the following prior art [references listed in Table 2] *including the knowledge of one of ordinary skill in the art*." (*Id.*) (emphasis added.) Thus, the existence of Table 2 supports only superficially KSEA's argument because Table 2 does not contain single references that "alone" render obvious claim 3.

In any event, Stryker asserts that Mr. Walbrink's statement is adequate based on his references to: (i) Section 6.4.4 (containing descriptions of Alpha O.R. (Section 6.4.4.2) and OR1 (Section 6.4.4.3)); (ii) the knowledge of one of ordinary skill in the art as described in the Technology background (Section 6.2); and (iii) the claims chart for claim 3 of the '420 patent in Section 6.4.8. Stryker cites *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1374-75 (Fed. Cir. 2012) for the proposition that Mr. Walbrink's "assertion of obviousness" based on Alpha O.R. and OR1 is a "sufficiently detailed statement of his opinions and the basis for his conclusions" because the "sole surviving limitation" of claim 3[7] is "simple and straightforward" and therefore, Mr. Walbrink's report "need not go into excruciating detail over an obviousness analysis." (Dkt. No. 394 at 21-22) (internal quotation marks omitted.)

Stryker's reliance on *Meyer* is misplaced for two reasons. First, the technology involved in *Meyer*—"using a plunger to froth milk in a container"—was markedly less complex than the technology at issue under dependent claim 3—"A system as claimed in claim 2 [itself dependent on claim 1], wherein the display window is located between the plurality of source icons and the plurality of destination icons." *Compare Meyer*, 690 F.3d at 1375 *with* (Dkt. No. 380-4 at 114.) Second, the *Meyer* court considered the complexity of the invention as a whole (a device used to froth milk) instead of considering only the complexity of a dependent claim. *Meyer*, 690 F.3d at

---

[7] Stryker asserts that "because KSEA disclaimed claims 1 and 2 of the '420 patent to terminate Stryker's IPRs, the only issue for analysis [under claim 3] is whether it would have been obvious to locate a display window between two pluralities of icons." (*Id.* at 21.)

1375.  As KSEA correctly points out, a dependent claim requires consideration of the invention

"'as a whole.'"  (Dkt. No. 398 at 13) (quoting *W.L. Gore & Assocs., Inc v. Garlock, Inc.*, 721 F.2d

1540, 1548 (Fed. Cir. 1983)); *see also Hartness Intern. Inc. v. Simplimatic Eng'g Co.*, 819 F.2d

1100, 1108 (Fed. Cir. 1987) (holding that the district court erred in finding dependent claim 3

obvious because it "fail[ed] to consider that dependent claim 3 included all the limitations of

[independent] claim 1"); 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to

incorporate by reference all the limitations of the claim to which it refers.").  Here, because claim

3 is necessarily dependent on claim 2, which itself is dependent on claim 1, Mr. Walbrink cannot

merely "refer[ ] to the other parts of his report to support his obviousness opinions for [claim 3's]

simple limitation," as Stryker insists.  (*See* Dkt. No. 394 at 21.)

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that Mr. Walbrink provide a

"complete statement" of his opinions and "the basis and reasons for them."  Mr. Walbrink's

obviousness theory involving Alpha O.R. and OR1 is conclusory and fails to comply with that

requirement.  Accordingly, the Court grants KSEA's motion to strike the challenged language

from Section 6.4.5.

### 3. Uncrystallized Theories in the Christoff and Walbrink Invalidity Reports

### i. Mr. Walbrink's Theories in Sections 6.4.4 and 6.5.3

KSEA moves to strike from Sections 6.4.4 and 6.5.3 of Mr. Walbrink's Invalidity Report

the sentence: "Other references or portions of references may also be relevant."  (Dkt. No. 379-4

at 17) (citing Dkt. No. 380-4 at 36, 126.)  KSEA argues that the sentence should be stricken

because Mr. Walbrink "provides no invalidity analysis of these references," or "even identif[ies]

these references."  (*Id.*)  Stryker counters that because "KSEA fails to identify what 'other

references' or 'portions of references' it believes Mr. Walbrink improperly relies upon," KSEA

has "identified no real harm"; thus, "[t]here is nothing to strike."  (Dkt. No. 394 at 23.)

Sections 6.4.4 and 6.5.3 state, in pertinent part:

> The following discussions are intended to be brief summaries of
> certain prior art references. Additional portions of each reference are
> identified in Section[s] 6.4.8 [and 6.5.7] below. These discussions
> identify example references and portions thereof. *Other references
> or portions of references may also be relevant*.

15

United States District Court
Northern District of California

(Dkt. No. 380-4 at 36, 126) (emphasis added.) Taken in context, the Court fails to see how the challenged language is prejudicial to KSEA or somehow contravenes Rule 26(a)(2)(B)(i), the lone authority cited by KSEA in support of its argument. Mr. Walbrink does not assert that "[o]ther references" not discussed *are* relevant; instead, he merely states that the "discussions identify *example* references," and therefore, "[o]ther references . . . *may* also be relevant." (*Id.*) (emphasis added.) In other words, Mr. Walbrink is clarifying that the discussions are not intended to constitute a definitive list of relevant references. Absent any allegations of prejudice caused by the challenged language, the Court denies KSEA's motion to strike Sections 6.4.4 and 6.5.3.

### ii. "Disclaimers" in Section VIII.F of Mr. Christoff's Report, and Sections 6.4.8 and 6.5.7 of Mr. Walbrink's Report

KSEA insists that the following language should be stricken from the claim charts included with Mr. Christoff and Mr. Walbrink's Invalidity Reports:

> Even if these references do not expressly disclose this claim element, the claim is obvious due to the inherent disclosure of the references and/or the knowledge of one of ordinary skill in the art. Examples of the knowledge of one of ordinary skill in the art are described in the Technology Background section.

(Dkt. No. 379-4 at 18) (citing Dkt. Nos. 380-3 at 202-23, 380-4 at 108-16, 175-81.) KSEA argues that such "broad reservations provide no analysis of the theories Stryker's experts intend to present." (Dkt. No. 379-4 at 18.) The Court agrees.

The challenged statements provide conclusions with no reasoning, and therefore, fail to comply with Rule 26(a)(2)(B)(i)'s requirement that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them." *See also Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) ("The purpose of the expert disclosure rule is to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses.") (internal quotation marks and citation omitted). The failure of Stryker's experts to provide any analysis supporting their conclusions is prejudicial to KSEA because it cannot adequately prepare to cross-examine Mr. Christoff and Mr. Walbrink regarding said conclusions or counter their reasoning with KSEA's own experts.

Stryker's argument that the challenged statements are not "reservations" or "disclaimers," but instead, reflect "the fact that the claim elements are also found elsewhere," (Dkt. No. 394 at 23), does not address the problem with the experts' lack of analysis. If Stryker is correct, then there is no harm in striking the statements.

Accordingly, the Court grants KSEA's motion to strike the challenged language from Section VIII.F of Mr. Christoff's Invalidity Report and from Sections 6.4.8 and 6.5.7 of Mr. Walbrink's Invalidity Report.

### iii. Mr. Christoff's Obviousness Theories in Section VIII.E

KSEA argues that Mr. Christoffs use of "open-ended language regarding his obviousness combinations should be stricken"; specifically, KSEA takes issue with Mr. Christoff's use of "for example" and "e.g." in Section VIII.E. (Dkt. No. 379-4 at 18.) Presumably in support of its argument, KSEA notes that "[n]o alternative examples or analyses are provided in Mr. Christoff's report." (*See id*.) KSEA cites no authority for its contention, other than citing Rule 26(a)(2)(B)(i) for the premise that "Mr. Christoff should be prevented from opining on analyses that do not appear in his report." (*See id*. at 19.) It is unclear to the Court how Mr. Christoff's use of "for example" and "e.g." contravenes Rule 26(a)(2)(B)(i), and KSEA's motion provides no clarity.

Accordingly, the Court denies KSEA's motion to strike Mr. Christoff's use of "for example" and "e.g." from Section VIII.E of his Invalidity Report. If, at trial, Mr. Christoff attempts to testify to something that KSEA believes was not disclosed in the expert report, KSEA may ask for appropriate relief from the trial judge.

### 4. Undisclosed Fact Witnesses in the Christoff and Thomas Reports

A party's initial disclosures must identify witnesses who are "likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). A party has an affirmative obligation to supplement its initial disclosures "in a timely manner" if they become "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). "There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified

during the taking of a deposition." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.

KSEA argues that Messrs. Christoff and Thomas's reports rely on undisclosed Stryker witnesses, "often as the sole source of information"; specifically, "Mr. Christoff relies on Mr. [William] Chang and Mr. [Keith] Evans, and Mr. Thomas relies on Ms. [Ann] Wong." (Dkt. No. 379-4 at 19.) KSEA contends that it was "prejudiced by Stryker's late disclosure" of those witnesses, and requests that the Court strike from the reports any reliance on Mr. Chang, Mr. Evans, or Ms. Wong. Stryker counters that it did disclose the three-named witnesses, either directly or through deposition testimony of other witnesses.

### i.     Mr. Evans

KSEA argues that although "Mr. Evans was disclosed to KSEA as being knowledgeable regarding sales and marketing of Stryker's SwitchPoint products," he was not "disclosed as being knowledgeable regarding the topics Mr. Christoff cites him for, namely technical information regarding Stryker's 1488 Camera product." (*Id.*) KSEA is wrong.

Stryker identified Keith Evans in its second supplemental initial disclosures as having knowledge of "[s]ales and marketing of certain Stryker products accused of infringement, specifically the accused SwitchPoint products, Sidne, and the 1488 camera." (Dkt. No. 394-10 at 5, ¶ 8.) Stryker served KSEA its second supplemental initial disclosures on October, 11, 2017. (*Id.* at 14.) On the same day, Stryker also designated Mr. Evans as a 30(b)(6) witness regarding multiple topics, including technical, marketing, and sales information regarding Stryker's 1488 camera. (Dkt. No. 394-11 at 3-4.) KSEA then deposed Mr. Evans on October 27, 2017, and specifically questioned him regarding the 1488 camera. (Dkt. No. 405-4 at 3-4.)

The Court denies KSEA's request to strike reliance on Mr. Evans from Mr. Christoff's report because Stryker timely disclosed Mr. Evans as a witness regarding the topics referenced in Mr. Christoff's report, and KSEA deposed Mr. Evans.

### ii.     Mr. Chang

KSEA argues that William Chang was not "disclosed to KSEA during fact discovery." (*Id.* at 19.) The Court disagrees.

Mr. Chang's identity and role as an employee of Stryker was disclosed to KSEA through the deposition testimony of three Stryker witnesses. (*E.g.*, Pang Dep., Dkt. No. 394-15 at 3 (identifying William Chang as Stryker's Chief Technology Officer)); (Nambakam Dep., Dkt. No. 394-16 at 3-4 (identifying William Chang as a Stryker employee who "work[ed] on the 1488 camera")); (Subramanian Dep., Dkt. No. 394-17 at 4 (identifying William Chang as Stryker's "CTO of Endoscopy," and stating that Mr. Chang "was involved with the 1488 camera").) This disclosure is sufficient to relieve Stryker of its formal disclosure obligation under Rule 26(e)(1). *See* Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment; *see also Procongps, Inc. v. Skypatrol*, LLC, 2013 WL 4551828, at *1 (N.D. Cal. Aug. 27, 2013) (finding description of witness by another witness during deposition sufficiently disclosed to plaintiff the former's "identity and role prior to the fact discovery cut-off."); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, No. 08-2912, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012) ("[I]ncidental discovery, particularly during a deposition, of information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as formal filing . . . .") (internal quotation marks and citation omitted).

Accordingly, the Court denies KSEA's request to strike reliance on Mr. Chang from Mr. Christoff's report. Mr. Chang's identity and role as an employee of Stryker likely to have discoverable information was sufficiently disclosed to KSEA prior to the fact discovery cut-off.

### iii.    Ms. Wong

KSEA argues that Ann Wong was not "disclosed to KSEA during fact discovery." (Dkt. No. 379-4 at 19.) The Court disagrees.

KSEA deposed Stryker's Vice President of Finance, Roderic Macleod on October 26, 2017. (Macleod Dep., Dkt. No. 394-18.) KSEA questioned Mr. Macleod regarding financial information contained in multiple spreadsheets prepared for this litigation. (*Id.*) Mr. Macleod identified Ms. Wong as a "finance manager" for Stryker, and further identified her as the employee who created the spreadsheets in question. (*Id.* at 3-4.) In total, Mr. Macleod separately identified Ms. Wong as the creator of eleven spreadsheets prepared for this litigation. (*Id.* at 5-16.)

The Ninth Circuit has recognized that "a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014); *see also Nuance Commc'ns*, 2012 WL 2838431, at *2 ("[M]erely mentioning the individual's name at a deposition or in a discovery response may not be enough to put the other party on notice that the individual is being disclosed as a trial witness."). Here, however, Mr. Macleod did not "merely mention" Ms. Wong's name or make a "passing reference" to her; instead, Mr. Macleod identified Ms. Wong's role with Stryker and indicated—clearly and repeatedly—that she created the financial spreadsheets about which Mr. Macleod was being questioned. Thus, KSEA was on notice that Ms. Wong was "likely to have discoverable information—along with the subjects of that information—that [Stryker] may use to support its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A).

Accordingly, the Court denies KSEA's request to strike reliance on Ms. Wong from Mr. Christoff's report. Ms. Wong's identity and role as an employee of Stryker likely to have discoverable information was sufficiently disclosed to KSEA prior to fact discovery cut-off.

### 5. Mr. Sterne's Expert Report

KSEA argues that Mr. Sterne's report should be stricken because it constitutes an improper rebuttal, in that it did not "'contradict or rebut evidence on the same subject matter denied by [KSEA's] expert.'" (Dkt. No. 379-4 at 20 (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).) Stryker counters that Mr. Sterne's report was properly submitted as a rebuttal report in compliance with Judge Seeborg's Scheduling Order, (Dkt. No. 292 at 2). Stryker is correct.

Under Rule 26(a)(2)(D), "[a] party must make [its expert] disclosures at the times and in the sequence that the court orders." The time for expert disclosures set forth under Rule 26(a)(2)(D)(ii) applies "[a]bsent a stipulation or a court order." Here, Judge Seeborg's Scheduling Order set December 21, 2017 as the "[d]eadline for serving expert reports for which a party bears the burden of proof." (Dkt. No. 292 at 2.) Mr. Sterne's report rebuts KSEA's charge of willful infringement, a claim for which KSEA bears the burden of proof. (See Dkt. Xxx) Because Stryker does not bear the burden of proof KSEA's willful infringement claim, December 21, 2017

20

was not the proper date for Stryker to serve Mr. Sterne's report. The Scheduling Order set February 15, 2018 as the "[d]eadline for serving rebuttal expert reports"; Stryker served Mr. Sterne's report on February 15, 2018, in compliance with the Scheduling Order.

Accordingly, the Court denies KSEA's motion to strike Mr. Sterne's Expert Report.

### 6. Interrogatory Responses

KSEA's motion to strike includes a footnote requesting that the Court also "strike the entirety of [Stryker's] supplemental interrogatory responses" because they "incorporat[e] its expert reports and expert depositions by reference." (Dkt. No. 379-4 at 5 n.2) (citing Dkt. Nos. 380-16 & 380-17.) KSEA's reply clarifies that "[t]o the extent Stryker's Supplemental Interrogatory Responses include the information and opinions sought to be stricken by KSEA's motion, it should also be stricken from the Interrogatory Responses." (Dkt. No. 398 at 17.) KSEA fails to identify particular responses that may contain such information, and it also fails to explain why the interrogatory responses need be stricken. At this stage of the litigation the expert reports, not interrogatories, will govern the scope of the experts' permissible testimony. In any event, the Court expects that, absent a successful appeal to the district court, Stryker will abide by this Court's Order and not attempt to raise theories at trial that have been stricken by this Order.

## II. Administrative Motions to File under Seal

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. [Federal Rule of Civil Procedure] 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). Sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." N.D. Cal. Civ. L.R. 79-5(a). A party may meet this burden by showing that the information sought to be withheld creates a risk of significant competitive injury and particularized harm. *Phillips v. Gen Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2006). A party may also meet this burden by establishing that the information contains trade secrets that create a

risk of significant competitive injury and particularized harm, *see Apple, Inc. v. Psystar Corp.,* 658 F.3d 1150, 1161-62 (9th Cir. 2011) (citation omitted), or where disclosure of the information would violate a party's legitimate privacy interest that similarly leads to such risk, *see, e.g., Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP,* 2010 WL 3221859, at *5 (N.D. Cal. Aug. 13, 2010). Whatever the grounds, a party must "narrowly tailor" its request to sealable material only. *Id.*

### 1. KSEA's Motion to Strike and Exhibits C-F, J, and K

Pursuant to Civil Local Rules 7-11 and 79-5, KSEA moves to file under seal portions of its motion to strike, and the entirety of exhibits C-F, J, and K to the Kosma Declaration ("Kosma Strike Declaration"). (Dkt. Nos. 379 & 380-1.) KSEA's motion explains that the information it seeks to seal comprises confidential information as designated by Stryker. Pursuant to Rule 79-5, Stryker filed a declaration clarifying that KSEA's motion to strike does not contain Stryker's confidential information, and therefore may be filed publicly without redactions. (Dkt. No. 392 at ¶ 12.) Strkyer's declaration also clarifies that exhibit C was previously filed on March 1, 2018 as exhibit E, (*id.* at ¶¶ 13-27); by order dated July 18, 2018, (Dkt. No. 421), the Court granted the parties' stipulated administrative motion to file portions of that document under seal, (Dkt. No. 406). With regard to exhibits D and F, Stryker's declaration clarifies that portions of those documents do not contain confidential information and requests that the Court file only the nonpublic, confidential business information under seal. (Dkt. No. 392 at ¶¶ 28-33.) Stryker's declaration includes revised versions of exhibits D and F with proposed redactions. (Dkt. Nos. 392-3 & 392-7.)

Stryker's declaration also clarifies that the parties agreed to allow Stryker to re-file truncated versions of exhibits E, J, and K that include only the pages referred to in KSEA's motions to strike and exclude, (Dkt. Nos. 380 & 386, respectively). (Dkt. No. 392 at ¶¶ 7-8; Dkt. Nos. 392-6, 392-9, 392-11.) Stryker declares that portions of exhibit E contain confidential information and requests that the Court file only the nonpublic information under seal. (Dkt. No. 392 at ¶¶ 34-41.) As for exhibits J and K, Stryker does not believe the truncated versions contain confidential information and does not move to have the information sealed. (*Id.* at ¶¶ 48-50, 51-

53.)  Concurrent with its declaration, however, Stryker filed the Keeler Declaration in support of

KSEA's motion to seal portions of the truncated version of exhibits E and K.  (*Id*. at ¶ 54.)  The

Keeler declaration clarifies that highlighted portions of exhibits E and K contain KSEA's

confidential information, and therefore should be filed under seal.  (Dkt. No. 392-12 at ¶¶ 5-9.)

The Court has reviewed the proposed redactions and Rule 79-5 declarations and grants

KSEA's motion in part.  The proposed redactions in Stryker's revised exhibits are narrowly

tailored and concern sensitive business information.  Therefore, the revised exhibits D, E, F, and K

to the Kosma Strike Declaration shall be filed under seal with Stryker's proposed redactions.

KSEA's motion to strike and exhibit J to the Kosma Strike Declaration shall not be filed under

seal because the documents do not contain Stryker's confidential information.

### 2.    Exhibit 9 to the Carrozza Declaration

Stryker moves to file under seal a portion of exhibit 9 to the Carrozza Declaration filed in

support of Stryker's opposition to KSEA's motion to strike.  (Dkt. No. 393.)  Stryker explains that

the highlighted portion contains information designated by KSEA as confidential.  (Dkt. No. 393-

1 at 2.)  Pursuant to Rule 79-5, KSEA filed a declaration in support of Stryker's motion, stating

that the highlighted portion contains nonpublic "business and product information, and other

technical information."  (Dkt. No. 396 ¶¶ 5-7.)  The Court has reviewed the redacted portion of

exhibit 9 and agrees that it contains sensitive product information.  Therefore, the Court grants

Stryker's motion to seal exhibit 9 to the Carrozza Declaration.

### 3.    KSEA's Reply and Exhibits B, C, and D

KSEA moves to file under seal portions of its reply in support of its motion to strike and

portions of exhibits B, C, and D to the Kosma Declaration ("Kosma Reply Declaration").  (Dkt.

Nos. 397 & 398-1.)  KSEA explains that the portions contain confidential information as

designated by Stryker.  (Dkt. No. 397-1 at ¶ 8.)  Pursuant to Rule 79-5, Stryker filed a declaration

clarifying that only some of the portions requested to be sealed by KSEA contained confidential

information.  (Dkt. No. 405 at ¶ 4.)  Stryker declares that KSEA's reply and exhibits C and D do

not contain confidential information, and submits unredacted versions to be publicly filed.  (*Id.*)

Stryker also submits a revised version of exhibit B, which is an excerpt of the deposition transcript

of Chien Mien Pang, with "more narrowly-tailored redactions."  (*Id*. at ¶¶ 6-8.)

The Court reviewed the proposed redactions and Rule 79-5 declarations and agrees that exhibit B contains nonpublic business information.  Therefore, the Court grants KSEA's motion in part.  The revised exhibit B to the Kosma Reply Declaration shall be filed under seal with Stryker's proposed redactions.  KSEA's reply in support of its motion to strike and exhibits C and D to the Kosma Reply Declaration shall not be filed under seal.

This Order disposes of Docket Nos. 379, 380, 393, and 397.

**IT IS SO ORDERED.**

Dated: August 1, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge